De Ruyter *v.* The Trustees of St. Peter's Church.

---

### De Ruyter *vs.* The Trustees of St. Peter's Church and others.

By the English common law, corporations aggregate, including religious corporations, and some corporations sole, had the same right as natural persons to alien real estate, which they had the capacity to take and hold; and for the same purposes and objects.

It is a natural presumption, and therefore adopted as a rule of law, that on the settlement of a new territory by a colony from another country, and where the colonists continue subject to the government of the mother country, they carry with them the general laws of that country, so far as those laws are applicable te the colonists in their new situation; which thus become the unwritten law of the colony until altered by common consent, or legislative enactment.

A corporation has the right to make an assignment in trust for its creditors; and may exercise it to the same extent, and in the same manner, as a natural person; unless restrained by its charter, or by some statutory provision.

The trustees of a religious corporation have the power, with the consent of the court of chancery, and under the sanction of its order, to make an assignment of the real estate of the corporation, to trustees, in trust for the payment of all the creditors of the corporation ratably.   And their deed of such real estate, under the corporate seal, will vest in the grantees the legal title of the corporation in such real estate and in the equity of redemption in mortgaged premises.

THIS was an appeal from an order of the vice chancellor of the first circuit, upon exceptions to a master's report as to the

right to the surplus moneys, on a foreclosure and sale of mort-
gaged premises. The premises, at the time of the execution
of the complainant's mortgage, and at the time of the convey-
ance to Power and Pise, as hereafter mentioned, belonged to
The Trustees of St. Peter's Church in the city of New-York, a
religious corporation created by a special act of the legislature,
in April, 1817. On the 7th of September, 1844, the corporation
being insolvent and owing about $142,000, including the mort-
gages upon its real estate, resolved to convey all its property,
real and personal, to the appellants, as trustees for the payment
of all the debts ratably; except the debts already secured by
mortgages thereon. A petition was thereupon presented to the
vice chancellor of the first circuit, for an order permitting the
corporation to sell and convey its property to Power and Pise
in trust as aforesaid; and an order was made by the vice chan-
cellor, according to the prayer of the petition, on the 13th of
September, 1844. On the same day, the corporation made a
conveyance accordingly, under its corporate seal, which was
accepted by the appellants as such trustees; and was duly re-
corded as a conveyance of real estate on the 14th of the same
month. Two days after the recording of this conveyance in
trust, Alice Lalor and others, as the personal representatives of
J. A. Neil deceased, recovered a judgment against the corpora-
tion for a debt of about $3000. And at the same time, Eliza
Gallagher recovered another judgment for a debt, due to her,
of about $2000. Three other judgments were afterwards re-
covered against the corporation, in the latter part of the same
month. All these judgments were duly docketed, so as to become
liens upon any real estate which belonged to the corporation
at the times when they were respectively recovered. The
mortgaged premises were afterwards sold, under the decree of
foreclosure and sale in this cause, and produced a surplus of
about $2500 only. And on the 16th of January, 1845, the
usual order of reference was made to the master, upon the ap-
plication of Power and Pise, the trustees, to ascertain and report
who was entitled to the surplus moneys, and the priorities of
the several liens thereon. On the 18th of the same month,

De Ruyter *v.* The Trustees of St. Peter's Church.

Alice Lalor and others, the plaintiffs in the first judgment, applied to the vice chancellor to vacate the order allowing the corporation to convey its property in trust for the payment of its debts. Their motion was denied, and they thereupon appealed from that decision. The chancellor, upon the argument of the appeal, was of opinion that the vice chancellor had not authority, under the act relative to religious corporations, to authorize the trustees of the corporation to assign all its property to other trustees for the payment of its debts, and that no title passed to the new trustees by the conveyance from the corporation. But he decided that the appellants, not being parties to the order authorizing such sale, had no right to apply to set it aside, they having no interest in the question. He therefore dismissed the appeal on that ground, without considering the question whether parties who had no lien upon the real estate at the time of entering the order authorizing a sale, could apply to set it aside if it was merely erroneous.

The master, upon the reference directed to him, reported that all the judgments were valid liens upon the equity of redemption in the mortgaged premises at the time of the sale under the decree of foreclosure; and that the two first judgments being docketed at the same time, must be paid ratably out of the surplus moneys, and that the conveyance to Power and Pise, in trust for all the creditors of the corporation, was void and gave to the trustees no interest in the surplus moneys. Power and Pise excepted to the report, and the vice chancellor, upon the hearing before him, overruled the exceptions and confirmed the master's report. From this decision of the vice chancellor, Power and Pise, the trustees, appealed.

*J. Blunt,* for the appellants.

*L. Livingston,* for the respondents.

THE CHANCELLOR. Upon a former occasion, on the argument of an appeal, I came to the conclusion that the authority given to the chancellor, to authorize a religious corporation to

De Ruyter *v.* The Trustees of St. Peter's Church.

sell its real estate did not extend to the case of a conveyance of the estate of such a corporation to trustees for the payment of all its debts ratably, and that the order of the vice chancellor could not affect the rights of the appellant in the case which was then before me. That appeal, however, was properly dismissed upon another ground. For, as the order was made while the appellants were mere creditors at large, and when the corporation might have produced the same effect by confessing a judgment to a trustee to secure the payment of all its creditors ratably, the appellants had no right to interfere with that order, if it was not void, but merely erroneous. The question as to the power of the court to make such an order, and the right of the corporation to make a general assignment for the benefit of all its creditors ratably, with the sanction of the court, has been more fully argued upon this appeal. I have also examined the question with great care, and have come to the conclusion that the opinion which I formerly expressed was wrong.

By the English common law, corporations aggregate, including religious corporations, and some corporations sole, had the same right to alien real estate which they had the capacity to take and hold, and for the same purposes and objects, as natural persons. (*Smith* v. *Clifford,* 1 *Sid. Rep.* 162. *Covent. Coke Lit.* 44, 300. *Com. Dig. Franchise,* F. 18. 1 *Ves. & Beame,* 244. 2 *Kent's Com.* 281.) Several statutes, however, were passed in the reign of Elizabeth, and one in the first year of her successor, restraining alienations of church property by religious corporations; and restricting the power of leasing the same, for a longer period than twenty-one years, or three lives, or below the accustomed rents. (*See* 1 *Evans' Stat.* 381 to 390.) These statutes, forming a part of the law of England at the time of the settlement of this state by colonists from England, under the charter to the Duke of York, were probably brought hither by those emigrants, and became a part of the laws of the colony ; although they were not afterwards re-enacted here. For it is a natural presumption, and therefore adopted as a rule of law, that on the settlemen of a new territory by a colony

De Ruyter *v.* The Trustees of St. Peter's Church.

from another country, and where the colonists continue subject
to the government of the mother country, they carry with them
the general laws of that country, so far as those laws are appli-
cable to the colonists in their new situation ; which thus become
the unwritten law of the colony, until altered by common con-
sent or legislative enactment. (5 *Wend. Rep.* 445. 17 *Idem*,
584.) That there was a common law existing in this state, re-
straining religious corporations from alienating church property,
is evident from the fact that in March, 1806, the legislature
thought it necessary to pass a special statute, authorizing the
chancellor, upon the petition of the corporation, to make an
order for such sale, and for the application of the proceeds there-
of to such uses as the corporation, with his assent, should con-
ceive to be most for the interests of the society to which the
property so sold did previously belong. (4 *W. & S. Laws*, 360.)
And this is the provision which the revisers, in 1813, embodied
in the general act for the incorporation of religious societies.
(3 *R. S.* 298, § 11.)

The trustees of this particular corporation, by the first section
of the act creating it, (*Laws of* 1817, *p.* 240,) are expressly
authorized to give, grant, demise, lease, or otherwise dispose of
the real as well as the personal estate of such corporation, as
shall appear to them to be just, for the use, benefit and advan-
tage of the church and congregation, with the concurrence of
the chancellor, to be first had and obtained, in the manner
specified in the eleventh section of the act for the incorporation
of religious societies. And the revised statutes conferred upon
the vice chancellor concurrent jurisdiction with the chancellor,
within the first circuit, of all causes and matters of which the
cognizance was vested in the chancellor by statute. It was a
matter of discretion, therefore, with the vice chancellor, whether
he would make an order allowing the trustees to dispose of the
real estate of the corporation, in the manner specified in their
petition, for the payment of all the creditors of the corporation
ratably. And their deed under the corporate seal, vested the
equity of redemption in the appellants, for the purposes specified
in that deed ; unless there is some rule of law which deprives

De Ruyter v. The Trustees of St. Peter's Church.

a corporation of the power to convey its property and effects to trustees, to sell the same for the benefit of its creditors, in the same manner as if the corporation was a natural person.

No person can suppose that a corporation which, by its charter, is to exercise its franchises and carry on its ordinary business by officers and agents, elected or appointed in a particular manner, can transfer all its franchises and business to other persons, to be exercised by them as general trustees. Hence the question has frequently arisen and been discussed, whether a corporation can make an assignment of its property to a trustee to sell the same and apply the proceeds to the payment of its debts; or whether the directors or trustees of the corporation must themselves sell the property and distribute the proceeds, or transfer the property directly to the creditors in payment of their debts. And it appears to be settled by a weight of authority which is irresistible, that a corporation has the right to make an assignment in trust for its creditors; and may exercise that right to the same extent, and in the same manner, as a natural person, unless restricted by its charter, or by some statutory provision.

This question was involved in the decision of the supreme court of the United States in *Lenox and others* v. *Roberts*, (2 *Wheat. Rep.* 373,) in which the assignees of the first Bank of the United States were permitted, in equity, to recover a demand which had been transferred to them by the corporation before its dissolution, under a general assignment of all the property of the corporation, in trust, to pay its creditors and to distribute the residue among the stockholders, upon the expiration of its charter. In *Haxtun* v. *Bishop*, (3 *Wend. Rep.* 13,) which came before the supreme court of this state, in 1829, an insolvent bank made a general assignment of all its property, in trust to sell the same, and apply the proceeds to the payment of all the creditors of the bank ratably. And Chief Justice Savage held that the assignment was valid. The same question came before the supreme court of Alabama in 1830, in the case of *Pope* v. *Brandon*, (2 *Stew. Rep.* 401,) where an incorporated bank, a few days before the expiration of its charter,

made a general assignment of all its property and effects to trustees to convert the same into money and pay the debts of the corporation ratably, and to distribute the surplus, if any, among the stockholders. And the assignment was held valid. The like decision was made by the court of appeals of Maryland, in 1834, in the case of *The State* v. *The Bank of Maryland*, (6 *Gill & John. Rep.* 205;) where an insolvent corporation made a general assignment to trustees to pay all its debts ratably. In 1839, a like decision was made by the supreme court of Vermont, in the case of *Warner* v. *Mower*, (11 *Verm. Rep.* 385,) upon an assignment of the property of a manufacturing corporation in trust for its creditors, but giving preferences. Redfield, J., who delivered the opinion of the court in that case, says there can be no question that corporations of this character, as well as natural persons, may assign their property for the benefit of their creditors. And if they may do this, it follows of course that they can give such preferences as any other debtors may. In *Flint* v. *The Clinton Company*, (12 *New Hamp. Rep.* 431,) which came before the supreme court of New Hampshire in 1841, the court decided that a general assignment, by a corporation, in trust for the payment of all its debts ratably, was valid. In 1842, the same question was brought before the supreme court of Arkansas upon a general assignment made by the Real Estate Bank of Arkansas to a majority of its directors, as trustees for its creditors. And after a most elaborate argument by counsel, and a thorough examination of the case by the court, the assignment was held to be valid. (*Conway Ex parte*, 4 *Ark. Rep.* 304.) A similar decision was made in 1843, by the supreme court of Tennessee in the case of *Hopkins* v. *The Gallatin Turnpike Company*, (4 *Humph. Rep.* 403;) upon an assignment by an incorporated turnpike company of all its property and effects for the benefit of creditors. It is not necessary to say whether the form of the assignments in the two last cases, and the particular manner in which the trusts were to be executed, were not infringements of the principle that a corporation cannot assign its powers and franchises to others, to be exercised by them as trustees, or oth-

erwise. In the recent case of *The Susquehanna Canal Company* v. *Bonham*, (9 *Watts & Serg. Rep.* 27,) the supreme court of Pennsylvania decided that the franchises of a canal company incorporated for the benefit of the public, and the corporate rights of the company, could not be alienated by, or sold upon execution against it. And I cite the cases from Arkansas and Tennessee merely for the purpose of showing the recognition of the general principle by the courts of those states that a corporation may make a general assignment of its effects, which are capable of being sold by the corporation, to trustees in trust for the payment of its debts. The last case to which I shall refer on this point is that of *Dana* v. *The Bank of the United States*, (5 *Watts & Serg. Rep.* 223,) which came before the supreme court of Pennsylvania in 1843. There the late Bank of the United States, incorporated by the state of Pennsylvania, had made an assignment of a large amount of its real and personal estate to trustees in trust for the payment of preferred creditors ; and the assignment was held to be valid, after a very full and elaborate argument of the case by some of the ablest counsel in the union.

Whether it is expedient that a corporation which has so conducted its affairs as to become insolvent, should have the power, by a general assignment, to appoint its own administrators, or whether an insolvent individual ought to have power to appoint his own assignee, and to give preferences, are questions which belong to the legislature and not to the courts to determine. But as the law now stands, I must hold that this religious corporation, under the sanction of the order of the vice chancellor, had the power to make the assignment in question; and that. such assignment conveyed the legal title of the corporation to the equity of redemption, in the mortgaged premises, to the appellants. None of the judgments mentioned in the master's report, therefore, were liens upon that equity of redemption at the time of the sale under the decree of foreclosure.

The order of the vice chancellor must be reversed, and the exceptions to the report allowed. And an order must be entered declaring that the whole of the surplus moneys belong to the

appellants as trustees for the creditors; and directing the same to be paid to them accordingly. But as the respondents were misled by the opinion expressed on the former appeal, to which I have referred, they are not to be charged with costs either upon the reference, or on the argument of the exceptions before the vice chancellor, or with costs upon this appeal.