## DE RUYTER *vs.* ST. PETER'S CHURCH.

The charter of St. Peter's church (*Stat. of April* 11, 1817,) authorizes the trustees of the corporation " to give, grant, demise, lease, or otherwise dispose of its real and personal estate," provided that nothing in the act contained should authorize the trustees to " *sell*" the real estate without the concurrence of the chancellor to be obtained according to the 11th section of the general act for the incorporation of religious societies. Under this provision of the charter, *held*, that an *assignment* by the trustees, with the concurrence of the chancellor, of all the real and personal estate of the church, in trust to pay its debts, was valid.

A corporation, whether trading or religious, may, at the common law, assign its property in trust for the payment of its debts, unless restrained by its charter, or by some other statute.

An assignment of all the property of a corporation in trust to pay its debts, does not, it seems, operate as a transfer of the corporate franchises.

And such an assignment may be made to persons ineligible under the charter as general trustees of a religious society.

Under the general act for the incorporation of religious societies, (*Stat. April* 5, 1813,) the power to sell real estate is vested in the court of chancery, and not in the trustees; and the sale, it seems, may be directed to be made by a master or other officer, as well as by the trustees.

DE RUYTER filed his bill for the satisfaction of a mortgage executed to him by the trustees of St. Peter's church, in the city of New-York, and obtained a decree for the sale of the mortgaged premises. After a sale under the decree the surplus moneys, amounting to $2507, were brought into court and an order was entered for a reference to a master to ascertain who were entitled thereto. John Power and Charles Constantine Pise claimed the entire surplus by virtue of a deed of assignment made by the trustees of St. Peter's church, on the 13th of September, 1844, conveying to them the property of the church in trust for the payment ratably of all the debts of the corporation excepting those secured by mortgage. This assignment was executed in pursuance of an order made by the vice chancellor of the first circuit upon the application of the trustees under the 11th section of the general act for the incorporation of religious societies. The assignment was executed shortly pre

vious to the mortgage sale. After the execution of the deed of assignment and before the sale, *Lalor, Gallagher*, and others, obtained two judgments against the trustees of the church in their corporate capacity, and these judgment creditors claimed the surplus moneys on the ground that the assignment to Power and Pise, and the vice chancellor's order in pursuance of which it was executed, were void.

The master reported in favor of the judgment creditors. Power and Pise excepted to his report. The vice chancellor overruled the exceptions and confirmed the report, by an order made on the 16th of July, 1845. On appeal to the chancellor this order was reversed, the exceptions to the master's report were allowed, and the surplus moneys were directed to be paid over to Power and Pise, the assignees. (*See* 3 *Barb. Ch. Rep.* 124.) From the decision of the chancellor the judgment creditors appealed to this court.

*L. Livingston*, for appellant.

*J. Miller*, for respondents.

RUGGLES, J. delivered the opinion of the court.

The question is upon the validity of the deed of assignment in trust for the payment of the debts of the corporation. In this question is involved another, on which the case turns; and that is, whether the vice chancellor's order authorizing and concurring in the sale or assignment for the payment of debts was valid, or void for want of jurisdiction to make it.

The trustees of St. Peter's church in the city of New-York were incorporated on the 11th of April, 1817. The first section of their act of incorporation confers upon them the power to "purchase, take, have, hold, receive and enjoy to themselves and their successors forever in fee simple or by any lesser title any estate or interest in any lands, tenements or hereditaments, and the rents, issues and profits thereof, the yearly income or rent of which shall not exceed the sum of $10,000, whether the same be by gift, grant, bargain or sale; and also to purchase,

take, hold, possess and enjoy any moneys or other personal es-
tate whatsoever, by gift, grant, bargain and sale, bequest or
otherwise; and the same lands, tenements, hereditaments, or
personal estate, *to give, grant, demise, lease, or otherwise dis-
pose of as to them shall appear proper and just according to
the best of their judgment, for the benefit and advantage of the
said church and congregation.* Provided that nothing herein
contained shall authorize the trustees to sell the real estate unto
the said church or congregation belonging, *without the concur-
rence of the chancellor to be first had and obtained in the man-
ner specified in the* 11*th section of the act entitled "an act to
provide for the incorporation of religious societies."*

By the 11th section of that statute it was made "lawful for
the chancellor of this state upon the application of any religious
corporation, in case he should deem it proper, to make an order
for the sale of any real estate belonging to such corporation,
and to direct the application of the moneys arising therefrom, by
the said corporation, to such uses as the same corporation, with
the consent and approbation of the chancellor, shall conceive to
be most for the interest of the society to which the real estate
so sold did belong."

The trustees of St. Peter's church stand on a different footing
with respect to their power to sell their real estate, from corpo-
rations formed under the general act "to provide for the incor-
poration of religious societies, passed 5th April, 1813." (3 *R. S.*
206, 2*d ed.*) By that act the religious societies incorporated in
pursuance of its provisions had power to purchase, take, and
hold real estate, and to demise, lease, and hold the same for the
use of the church, but not to sell or otherwise dispose of the
same. (*See section* 4.) The only authority to sell their lands
was that contained in the eleventh section of the statute; and
and this is an authority to the chancellor to make an order
for the sale, and not a power to the corporation. When the
corporation conveyed under such an order it acted rather as
the agent of the court to which the power was granted, than as
the owner of the land. Under that section the chancellor might
have directed the sale to have been made by a master or other

De Ruyter v. St. Peter's Church.

officer, and the sale would have been as valid as if made by the trustees.

But in the case of St. Peter's church, the power to sell is granted expressly and directly to the corporate body, and when the trustees execute a deed they act as owners in passing the title. Their charter requires that they should have the concurrence of the chancellor before they sell; and this concurrence must be obtained in the manner specified in the 11th section of the general act. But the power to sell is in the trustees and not in the court of chancery. It would seem to be unnecessary for the chancellor to direct the application of the moneys arising from a sale by this corporation, for although his concurrence is to be obtained in the manner prescribed by the 11th section of the general statute, his duty is not, in express terms, regulated by it. But in the present case, the money was directed to be applied to the payment of the debts. The order specified the trusts to be contained in the deed of assignment, one of which was to sell the estate, and another was to apply the money to the payment of the debts ratably and without preference.

The performance of the trust by the assignees may be enforced in equity; and the assignment having been made under an order of the court of chancery, I think the remedy for a violation of the trust may be administered on a summary application. If therefore the vice chancellor was required in this case, as in the case of a sale of the lands of a corporation formed under the general statute, to direct the application of the money arising from the sale, he has substantially done so.

The question here, however, is not whether the vice chancellor's order is erroneous. It is not before us on an appeal for reversal: the question is whether it is void, and we think it is not. The vice chancellor had the same power as the chancellor to act under the first section of the charter of this corporation in giving his concurrence in a sale of their real estate. (1 *R. S.* 168, § 2.) And having jurisdiction of the subject matter, the order could not be treated as a nullity, even if we had been of the opinion that the authority had been indiscreetly or improperly exercised. The deed of assignment passed the entire legal title of the lands

from the corporation to the assignees; and it was therefore a sale within the meaning of the charter. But if it should be conceded that in consequence of the equitable interest which the corporation still retains in the application of the avails of the lands, the assignment was not, strictly speaking, a sale, the concession is of no advantage to the judgment creditors in the present case; because the charter gives power to the trustees not only to sell, but "otherwise to dispose of" their lands; and the concurrence of the chancellor is made necessary to a sale, but not to any other disposition thereof.

It was insisted on the argument that the vice chancellor's order in sanctioning the assignment was virtually an appointment of new trustees in place of those elected under the charter; and of new trustees ineligible by the charter, which requires laymen only to be elected; and therefore that the assignment was a violation of the charter. But this position does not seem to be well founded. The reason for excluding the clergy from the management of the temporalities of that church was probably this; that the salaries of the clergy are paid from the temporalities, and they have therefore an interest which may be at variance with their duties as trustees. But they have no such interest as assignees. The whole assigned fund being received in trust for the payment of debts, no part of it can be applied to their individual use or otherwise diverted from the express purpose of the trust. The assignees are not clothed with a general discretionary power of managing the fund, but their duty being regulated by the order and assignment, is special and ministerial. The assignment, therefore, if valid, does not operate as a transfer of the corporate franchises.

The power of a corporation to assign its property in trust for the payment of its debts can not at this day be doubted. It has been settled not only in this state, (*Harlem* v. *Bishop*, 3 *Wend.* 13,) but in New-Hampshire, Vermont, Pennsylvania, Maryland, Tennessee, Alabama and Arkansas. The cases are cited in the chancellor's opinion in this case, 3 *Barb. Ch.* 124. It is unnecessary to repeat them here.

There is no solid distinction between the corporation of St.

Peter's church and a bank or railroad company with respect to its power of making an assignment for the payment of its debts, excepting that in the case of this corporation it must be made with the concurrence of the court of chancery. There is no allegation against the fairness and honesty of the transaction. It was the duty of the trustees to cause the debts to be paid, and this mode of doing it does not seem to be liable to any legal objection. The vice chancellor had therefore authority to make the order concurring in the deed of assignment, and the deed is valid. The chancellor's order ought to be affirmed.

Order affirmed.