Order affirmed, and judgment absolute ordered against plaintiff.

---

THOMAS S. CARPENTER, Appellant, v. THE BLACK HAWK GOLD MINING COMPANY et al., Respondents.

A corporation organized under the general manufacturing act (chap. 40, Laws of 1848, as amended by chap. 517, Laws of 1864) may, upon filing the requisite assent of two-thirds of its stockholders, mortgage its real estate to secure the payment of its debts, but not to raise money to carry on its operations.

It is not necessary that separate mortgages should be executed by the corporation to each creditor to secure his debt; a single mortgage to one or more persons in trust for the security of all the creditors is proper; and the mortgage may be given to secure bonds issued and delivered to the creditors, or sold to raise money to pay them. So, also, no particular form of mortgage is required; it may be in the form of a deed in trust, with power of sale in case of default in payment of the indebtedness secured.

A mortgage executed by such a corporation to secure bonds used to pay debts and also to raise money to carry on its business is not void *in toto;* in the absence of fraud, so far as the mortgage secures bonds used for the payment of debts, it is valid.

As to whether the corporation and its stockholders would not be estopped from questioning the validity of the mortgage, so far as it secures bonds not delivered to creditors or used to pay debts, but which were in the hands of *bona fide* holders, at least without restoring what was received by the corporation thereon, *quære.*

The fact that the mortgage purports to mortgage the franchise of the corporation and its personal property, as well as its real estate, does not invalidate it; so far as the real estate is concerned, it is valid.

The effect of such a mortgage is not necessarily limited to the real estate then owned by the company, but it may be made to cover after-acquired real estate.

A mortgage executed by a mining corporation upon lands in Colorado authorized a sale, after certain specified notices, in the city of New York. In an action to restrain a sale as thus authorized, *held,* that in the absence of any statute regulation the parties had the power to agree upon the manner of sale; that the statute of this State, in reference to the sale of mortgaged premises, had reference only to real estate in the State; and there being no proof that a sale as provided for in the mortgage was in conflict with the laws of Colorado, there was no ground for equitable interference.

(Argued September 30, 1874; decided January term, 1875.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department reversing a judgment in favor of plaintiff, entered on the report of a referee, and granting a new trial.

The action was brought to have a certain mortgage or deed of trust given by defendant the Black Hawk Gold Mining Company declared void, and for other relief.

In 1864 that company was organized as a corporation under the general manufacturing laws of this State, to work certain

gold mines situate in Gilpin county, in the Territory of Colorado, and it acquired the title to several mines there and continued to work the same until May, 1866.   It became indebted at that time in the sum of at least $250,000, the whole amount of which was not, however, then known to the directors of the company.   On the 8th day of May, 1866, at a meeting of the board of directors, the following resolution was adopted :

"*Resolved*, That the president and treasurer, under the direction of the executive committee, be authorized, upon receiving and filing the assent required by law of the stockholders owning two-thirds of our capital stock, to cause coupon bonds to be duly issued, of $1,000 each, secured by a first mortgage on the company's property, to the amount of two hundred and fifty thousand dollars, bearing interest at the rate of twelve per cent per annum, and the principal payable in three years, for the purpose of meeting expenses in construction account and general indebtedness, the interest to be paid semi-annually, and to be free of United States tax. Said bonds not to be sold below par."

On the tenth day of May stockholders owning at least two-thirds of the stock, in a paper reciting that resolution at length, gave their assent as follows : " We hereby assent to the due and proper execution of such first mortgage under the direction of the said executive committee, for the purpose of securing the due payment of said bonds at maturity, and the interest thereon, according to the terms and tenor of said resolution."   The said assent was duly filed on the 7th day of June, 1866, in the office of the clerk of Gilpin county, Colorado.

On the twenty-fourth day of May the board of directors passed the following resolution :

"*Resolved*, That the names of Beriah Wall and Benjamin White, of Providence, R. I., be and are hereby selected and directed by the board to be put into the proposed two hundred and fifty bonds to be issued by the company pursuant to the resolution of the board of May 8, 1866, of one thousand

dollars each, as trustees for the bondholders, and also in the proposed trust mortgage, as mortgagees to secure such bonds."

Subsequent to the filing of the assent aforesaid the company executed and delivered to the defendants White and Wall, as trustees, an instrument called a mortgage, which conveyed to them all the real estate, mines, mining property, personal property and franchises of the company, as well such property as the company then owned as that which it might thereafter acquire, in trust for the security of the holders of the 250 bonds. The mortgage recited that the company was indebted to divers persons, which debts it was desirous " to pay and secure for money raised and to be raised for the general business and liabilities incurred in the management and improvement of the said property and the making, erecting and completing the works, etc., in and appertaining to the successful carrying on and conducting the mining operations of said company," and that it " deemed it proper and advantageous to raise and provide for as aforesaid, by loan, the funds now due and necessary for these objects." It also recited that the company had executed the 250 bonds, the form of which was inserted. It provided that, in case of default for six months in payment of either principal or interest, the trustees could take possession of the property and work the mines, applying the net proceeds *pro rata* on the bonds; and, upon like default, upon the written request of any of the bondholders, they were empowered to advertise and sell at auction the mortgaged premises, at the Merchants' Exchange or other public place in the city of New York, after three months' public notice, once in each week in two of the daily papers printed and published in said city, and after serving a printed notice of such sale, at least six weeks before the day of sale, personally or by mail, upon each of the trustees of the company. The bonds were made payable to the two trustees named, or bearer, in three years, in the city of New York, and some of them were delivered to the said two trustees simultaneously with the execution and delivery of the mortgage, and some of them afterward, in all 183 in number. Some of the

bonds thus issued were delivered directly to creditors of the company in payment of the debts of the company; some were sold, and the proceeds applied in payment of debts, and some were sold and the proceeds used in working the mines subsequent to the issuing of the bonds. It was not definitely proved how much of the bonds or moneys were used for each purpose, or that they were all used for all the purposes.

Default having occurred in payment of the bonds in 1870, the two trustees gave notice of the sale of the mortgaged property at the Exchange salesroom, No. 111 Broadway, New York, according to the terms of the mortgage. Before the day of sale the plaintiff, a stockholder, alleging substantially the foregoing and other pertinent facts, and among them, that the directors of the company refused, upon request, to prosecute this action, commenced this action and prayed for relief that the said two trustees be enjoined from making the sale in pursuance of these notices, and that the mortgage be declared null and void.

Upon these facts the referee found, as conclusions of law, substantially that the mortgage was void, and that the sale should be restrained.

*T. B. Eldridge* for the appellant.

*Joshua M. Van Cott* for the respondents. Every corporation, unless restrained by its act of incorporation or other statute, has a right, as an incident to its existence, to borrow money necessary and proper to prosecute its business. (*Curtis* v. *Leavitt*, 15 N. Y., 9; *Beers* v. *Phœnix Glass Co.*, 14 Barb., 358; *Patridge* v. *Badger*, 25 id., 146.) Unless so restrained, a corporation may mortgage its property for the payment of the indebtedness so contracted. (Ang. & A. on Corp., § 191; *De Ruyter* v. *St. P. Ch.*, 3 N. Y., 238; *Susp. Bridge Co.* v. *Gen. Ins. Co.*, 3 Md., 305; *Richards* v. *Mer. R. R.*, 44 N. H., 127; *Barry* v. *Mer. Ex. Co.*, 1 Sandf. Ch., 280; *King* v. *Mer. Ex. Co.*, 5 N. Y., 547; *Clarke* v. *Titcombe*, 42 Barb., 122; *Whitewater V. C. Co.* v. *Vallette*, 21 How. [U. S.], 414;

*Pennock* v. *Coe*, 23 id., 117.) The mortgage executed by defendant was valid. (*Cruger* v. *H. R. R. R. Co.*, 12 N. Y., 196; *Wright* v. *Bundy*, 11 Ind., 398; *Bennett* v. *Un. Bk.*, 5 Humph., 612; 44 N. H., 127; 5 N. Y., 547; *Truscott* v. *King*, 6 id., 161; *Cent. G. M. Co. v. Platt*, 3 Daly, 263; 2 Greenl. C. R., title 32, chap. 2, § 64; *Wayne* v. *Clark*, 6 Cush., 11; *Harrison* v. *Phillips*, 12 Mass., 461; *Jackson* v. *Rowland*, 6 Wend., 666; *Lamson* v. *Thurday*, 3 Metc., 281.) The objection that the mortgage embraced the personalty, as well as realty, was not valid. (*Darling* v. *Rogers*, 22 Wend., 483: *Curtis* v. *Leavitt*, 15 N. Y., 96.) The company having received the benefit of the bonds, cannot object that the mortgage was *ultra vires*. (*Bissell* v. *N. Y. R. R. Co.*, 22 N. Y., 258; *Zabriskie* v. *C. C. and C. R. R. Co.*, 23 How. [N. S.], 381; *Parish* v. *Wheeler*, 22 N. Y., 494; *Ranger* v. *G. W. R. Co.*, 5 H. L. C., 86; *Mackay* v. *Coml. Bk. of B.*, L. R., 5 P. C. Cas., 394.)

EARL, C. The referee held that the mortgage was void and of no effect, and that it should be delivered up and canceled, and that the defendants White and Wall, the trustees, should be perpetually restrained from selling the mortgaged property under the power contained in the mortgage. Hence, if the mortgage was a valid security for any amount, the General Term properly reversed the judgment entered upon the report of the referee.

This company was organized under the general act " to authorize the formation of corporations for manufacturing, mining, mechanical or chemical purposes." (Chap. 40, Laws of 1848.) The second section of that act provides that any company formed under that act shall be capable in law of purchasing, holding and conveying any real and personal estate whatever, which may be necessary to enable it to carry on its operations, " but shall not mortgage the same or give a lien thereon." This latter clause is an abridgement of the powers which such corporations would otherwise have. Corporations, unless restrained by their charters, have the power to mortgage

their property to secure borrowed money, or their debts. (Angell & Ames on Corp., 191; *De Ruyter* v. *St. Peter's Church*, 3 N. Y., 238; *Barry* v. *Merchants' Exchange Co.*, 1 Sandf. Ch., 280; *King* v. *Same*, 5 N. Y., 547; *Richards* v. *Merrimack Railroad*, 44 N. H., 127.)   This clause was modified by section 2 of chapter 517 of the Laws of 1864, which provides that any corporation formed under the act of 1848, "may secure the payment of any debt" "by mortgaging all or any part of the real estate," "provided that the written assent of the stockholders, owning at least two-thirds of the capital stock of such corporation, shall be first filed in the office of the clerk of the county where the mortgaged property is situated." This provision removes the restraint as to mortgaging real estate, leaving the restraint, as to mortgaging personal property, still in force.   A mortgage upon real estate is allowed only to secure the payment of debts.   It cannot be made to raise money merely to carry on the operations of the company.

It was manifestly the intention of the directors of this company, and of the stockholders who gave their assent to the mortgage, that the bonds secured by the mortgage should be used not only to pay debts, but also to raise money to carry on the business of the company.   It is also manifest that the bonds were used for both purposes; and it is claimed that this invalidates the mortgage.   There is no proof or finding that the bonds were fraudulently issued, or that the mortgage was fraudulently made, and hence it cannot be claimed that the mortgage was void or voidable on that account.   Some bonds were issued and used for a proper purpose, and so far as the mortgage secures such bonds, how can it be held illegal and invalid?   Creditors, who have taken such bonds for the payment of the debt of the company due them have the right, through the trustees named in the mortgage, to rely upon and resort to the security.   It may be that the bonds not delivered to the creditors were taken and are now held by *bona fide* holders, and that they are valid in their hands; and that as against such holders the company which has appropriated and had the benefit of the bonds issued is estopped from claiming

the invalidity of the mortgage, and that without restoring what it has received, it cannot repudiate either the bonds or the mortgage.   And it is quite plain that the same principle which in such cases would estop the company would estop any stock-holder of the company. (*Zabriskie* v. *Cleve., Col. and Cin. R. R. Co.*, 23 How. [U. S.], 381 ; *Parish* v. *Wheeler*, 22 N. Y., 499 ; *Ranger* v. *Great-western Railway Co.*, 5 H. L. C., 86 ; *Mackay* v. *Commercial Bank of New Brunswick*, 5 Privy Council Cas., 394 ; *Moran* v. *Commissioners of Miami County*, 2 Black., 722 ; *State* v. *Trustees of Union Township*, 8 Ohio St., 394 ; *Society for Savings* v. *City of New London*, 29 Conn. 174.,) Hence there is nothing in the preliminary proceedings, nor in the circumstances thus far alluded to, which lay the foundation for the decision of the referee.

Neither is the mortgage invalid because it purports to mort-gage the franchises of the company, and its personal property as well as its real estate.   A corporation, without some statute allowing it, can neither sell nor mortgage its franchises. (*Sus-quehanna Can. Co.* v. *Bonham*, 9 Watts & S., 27 ; *Arthur* v. *Coml. and R. R. Bk.*, 9 Smedes & M. (Miss.), 394 ; *New Orleans, etc., R. R. Co.* v. *Harris*, 27 Miss., 517 ; *Stewart* v. *Jones*, 40 Mo., 140.)   Hence this mortgage, so far as it purports to convey the franchises of the company, is simply inoperative.   The trustees therein named could not sell and give title to the franchises, and there was no occasion for any interference of a court of equity to prevent such an attempted sale.   Unless the doctrine of estoppel should apply, the mortgage was also, upon its face, invalid as to the personal property, and the trustees could not sell and give title to the same.   But there is no reason for equitable interference as to the personal property.   If the trustees had the right to sell it, equity ought not to interfere. If they had no right to sell it under the mortgage, then there is no ground disclosed in the evidence or the findings of the referee which call for equitable interference.   It does not appear how much personal property there was, nor how or to what extent the company or the stockholders would be dam-aged by its sale.   If equity could interfere at all in such a

case, it would be only to prevent a serious and irreparable mischief. But, in any event, the mortgage would be valid as to the real estate, and that is sufficient for our present purpose.

If this mortgage can properly be said to have been given to secure the payment of any debts, I can perceive no objection to its form. The statute prescribes no form, and there is no rule of law which requires a mortgage upon real estate to be in any particular form. The mere deposit of title deeds to secure the payment of money borrowed is an equitable mortgage. (*Rockwell* v. *Holby*, 2 Sandf. Ch., 9 ; *Jackson* v. *Parkhurst*, 4 Wend., 369.) An absolute conveyance given as security and a defeasance bearing the same date is a mortgage. (*Jackson* v. *Green*, 4 Johns., 186; *Peterson* v. *Clark*, 15 id., 205.) A sealed grant of land for the term of one year on rent, and conditioned to be void on payment of a certain sum, with a covenant to pay it, is a mortgage. (*Elliott* v. *Pell*, 1 Paige, 263.) A deed absolute on its face may be shown to be a mere security for money, and thus a mortgage. (*Hodges* v. *The Tennessee Mar. and Fire Ins. Co.*, 8 N. Y., 416; *Murray* v. *Walker*, 31 N. Y., 399.) In all cases, no matter what the form of the mortgage may be, there is a right of redemption before foreclosure. In this case, the instrument executed to secure the bonds appears upon its face to be a mortgage, and to have been given simply as security. It may, in one sense, be called a trust deed, but it was intended as a mortgage security.

It is not in conflict with the statute, because it mortgaged the future as well as present real estate of the company. There is nothing in the statute which limits the effect of the mortgage to the present real estate of the company, and nothing in the nature of a mortgage security which can thus limit its effect (*Seymour* v. *Canandaigua and Niagara Falls R. R. Co.*, 25 Barb., 284; *Fisk* v. *Potter*, 2 Abb. N. Y. Ct. of App. Dec., 138); besides, there was no proof that there was any after-acquired real estate.

There is no objection to the mortgage because it authorized a sale, after certain notices specified, in the city of New

York, of real estate situate in Colorado. Our statute in reference to the sale of mortgaged premises under a power of sale contained in a mortgage has reference only to real estate and mortgages recorded in this State. (*Elliott* v. *Wood*, 45 N. Y., 71.) In the absence of any statute regulation, under any system of laws, the parties to a mortgage must have the power to agree upon the manner in which the property may be sold to realize the security. In *Elliott* v. *Wood* (*supra*), Judge ALLEN says: " The power of sale was a part of the security, and its terms, so far as consistent with law, were matters of conventional arrangement between the parties."

Our statutes have no force in Colorado, and there was no proof or claim upon the trial that a sale under this mortgage in the city of New York was in conflict with any law of Colorado. The terms provided in the mortgage upon which sale could be made were fair and just, in no sense oppressive, and not illegal, and hence they furnish no ground for equitable interference in this case.

I am now brought to the last question which I propose to consider. The referee, as appears from his opinion, held the mortgage to be void, upon the ground that it was not given to some creditor to secure some debt of the company. He construed the statute of 1864 to authorize a mortgage only to some creditor, and this view of the statute the General Term held to be erroneous, and I agree with it. The object of the statute was to enable a company to secure its debts. It could not have been contemplated that it should be obliged to execute a separate mortgage to each one of its creditors. Such a construction of the statute would be mischievous and inconvenient. It would enable one creditor to get a priority over others, and would largely increase the expenses in case of default. A single mortgage to one person, in trust for the security of all the creditors, will accomplish the purpose of the statute, and lead to no mischievous consequences which I can perceive. Such a mortgage is given to secure the payment of the debts of the company. The statute does not, in its terms or its spirit, require that it should be given directly

to the creditors. Mortgages to one person in trust for the benefit of others have frequently been used, and upheld by the courts. (*De Ruyter* v. *St. Peter's Church,* 3 N. Y., 238; *King* v. *Merch. Exch. Co.,* 5 id., 547 ; *Bucklin* v. *Bucklin,* 1 Abb. Ct. of App. Dec., 242.)

But it is further claimed that this mortgage was not given to secure the payment of debts, because it was given to secure the payment of the bonds, and this was also the view of the referee. All the statute requires is, that the mortgage should be given to secure the payment of the debts. The mode in which this should be done was left to the company. It might be by a mortgage directly to the creditors, or to trustees for their benefit, or by a mortgage to secure bonds issued and delivered to the creditors, or sold to raise money to pay them. In either form, the mortgage secures the payment of the debts, and accomplishes the purpose of the statute. As to the bonds actually delivered to the creditors, there can be no question. The debts due to them continued to exist, and were secured by the bonds and mortgage in every sense. The same is true of the bonds sold for money to pay the debts, The company owed $250,000 ; suppose that it had sold bonds for the whole amount and used the proceeds to pay the debts. it would still owe $250,000, and, in a broad sense, it would be the same debt. Its form, and the persons holding it, would simply be changed. Hence, I think that neither the letter nor spirit of the statute was violated by this mortgage. (*Richards* v. *Merrimack R. R.,* 44 N. H., 127.)

The order of the General Term must be affirmed, and judgment absolute ordered against the plaintiff, with costs.

LOTT, Ch. C., GRAY, DWIGHT and REYNOLDS, CC., concur, except that they express no opinion as to the validity or invalidity of the mortgage as a security for the bonds which were not delivered to pay debts, or used to raise money to pay debts existing at the time the mortgage was executed.

Order affirmed, and judgment accordingly.