DANIEL LORD, JR., as Trustee, etc., Respondent, *v.* THE YON- KERS FUEL GAS COMPANY et al., Appellants.

*It seems* that under the provision of the acts of 1864 and 1871 (§ 2, chap. 517, Laws of 1864, as amended by chap. 481, Laws of 1871), amending the General Manufacturing Act by authorizing a corporation, organized under it, upon written consent of stockholders owning two-thirds of its capital stock, to mortgage its real and personal estate to secure the pay- ment of any debt which may be contracted by it in the business for which it was incorporated, it is not essential to the validity of a mort- gage that it should have been given to secure an antecedent debt ; a debt contracted simultaneously with the giving of the security, if legitimate and incurred in the business of the company, is within the authority conferred.

*It seems,* therefore, that where a bond of the corporation, secured by its mortgage, is given, with the requisite consent, to the lender for money advanced at the time, to be used for the legitimate business purposes of the corporation, whether the payment of an antecedent debt or other pur- poses for which it is entitled to borrow money, the securities are valid.

Where a trust mortgage is given by such a corporation to secure the pay- ment of its negotiable bonds to be thereafter issued, it is not essential that the debts authorized to be secured should be in existence at the time of the execution of the mortgage and bonds ; the statute is com-

plied with if the bonds are negotiated only for the purpose of securing or paying debts contracted before the negotiation ; the security to the creditors then for the first time comes into being, and is as effectual as if the mortgage was executed at the same time with the delivery of the bonds.

The act of 1878 (Chap. 163, Laws of 1878), authorizing such a corporation to secure the payment of any debt by mortgaging its goods and chattels " and also the franchises, privileges, rights and liberties thereof," provided the written consent of a majority of the stockholders owning at least two-thirds of its capital stock shall first be filed, did not operate as a repeal of said acts of 1864 and 1871; it simply gave it power to add to a chattel mortgage a mortgage upon the corporate franchises.

A consent to mortgage the real and personal estate, however, does not authorize a mortgage of the corporate franchises.

Where, therefore, a mortgage was executed by a manufacturing corporation upon its real and personal property and also its rights, privileges and franchises, to secure the payment of its negotiable bonds, the proceeds of which were used in payment of debts of the corporation contracted in carrying on its business after the execution of the mortgage, the bonds, however, being negotiated only and proceeds paid to the corporation as the debts became due, a consent of stockholders owning two-thirds of the capital stock to the execution of its mortgage upon its real and personal estate, having first been filed, but no consent to mortgaging the corporate franchises having been given, *held*, that the mortgage was valid as a lien upon the property, but was invalid and inoperative as to the franchises, privileges, rights or liberties.

(Argued June 12, 1885 ; decided October 6, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, entered upon an order made December 24, 1884, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

The nature of the action and the material facts are stated in the opinion.

*Ralph E. Prime* for appellants. Corporations chartered under the General Manufacturing Act of 1848 are prohibited generally from mortgaging any of their property, and they are specially granted power, with consent of stockholders, to mortgage, for the single and only purpose of securing or paying debts. (Laws of 1848, chap. 40, § 2 ; Laws of 1864, chap. 517 ;

Laws of 1871, chap. 481; *Morey* v. *F. L. & T. Co.*, 14 N. Y. 306; *Curtiss* v. *Leavitt*, 15 id. 259; *Sill* v. *Corning*, id. 300; *People* v. *Draper*, id. 568; *Matter of Bonnaff*, 23 id. 177; *Robins* v. *Fuller*, 24 id. 577; *People* v. *Dolan*, 36 id. 65; *Fellows* v. *Heermans*, 13 Abb. [N. S.] 7; *Rochester S. Bk.* v. *Averell*, 96 N. Y. 472.) The word "debts" required the relation of debtor and creditor. (*Weston* v. *Syracuse*, 17 N. Y. 110; *Garrison* v. *Howe*, id. 458; 2 Hill, 220; Bouv. Law Dic. "Debt"; 3 Blackst Com. 154.) The mortgage of its property, by a manufacturing company for any other purpose than to pay debts is illegal. (*Carpenter* v. *Black Hawk G. M. Co.*, 65 N. Y. 43; *Greenpoint S. Co.* v. *Whitin*, 69 id. 328; *Rochester S. Bk.* v. *Averell*, 96 id. 467.) The contract with Stewart was not a debt within the statute. The obligation of a contract is not a debt till the money becomes payable. (*Weston* v. *Syracuse*, 17 N. Y. 110; *Garrison* v. *Howe*, id. 458.) These mortgages are both of them void as to the property, goods, chattels, franchises, etc., for lack of a consent ever having been made by a sufficient number of stockholders. (*Rochester S. Bk.* v. *Averell*, 96 N. Y. 472; *Carpenter* v. *Black Hawk Co.*, 65 id. 50.) So much of a demand against the person whom the trustee represents as will satisfy the claim " must be allowed as a counter-claim." (Code Civ. Pro., §§ 501, 502, subd. 3.) Counterclaim or set-off may be pleaded in an action to foreclose a mortgage. (*Hunt* v. *Chapman*, 51 N. Y. 557; *Bathgate* v. *Hasken*, 59 id. 537; *Chapman* v. *Robertson*, 6 Paige, 627; *Holden* v. *Gilbert*, 8 id. 208; *Roosevelt* v. *Bk. of Niagara*, Hopk. 579.) The Code has made ample provision for a several judgment, authorizing judgment for or against one or more defendants, and for the determination in one judgment of the ultimate rights of the parties on the same side as between themselves and to grant to a defendant any relief to which he is entitled. (Code Civ. Pro., § 1204.) The receiver has the right to the affirmative relief asked, setting aside the mortgages. (*Vail* v. *Hamilton*, 85 N.Y. 453; *Rochester S. Bk.* v. *Averell*, 96 id. 472.)

*C. Frost* for respondent. The mortgages were valid, although not given to secure the payment of debts due or contracted the time the same were given. (Laws of 1864, chap. 517, § 2; Laws of 1871, chap. 481; *Rochester S. Bk.* v. *Averell*, 96 N. Y. 472; *Greenpoint S. Co.* v. *Whitin*, 69 id. 328.) The mortgages may also be upheld upon the principle that if a good consideration for an investment does not exist at the time it is executed, or some act necessary to give it vitality is omitted, but such consideration is subsequently paid or advanced, or arises in any way, or the act is performed, the instrument from that time becomes operative. (*Sumner* v. *Hicks*, 2 Black, 532; *Jones* v. *G. & I. Co.*, 101 U. S. 627; *Rochester S. Bk.* v. *Averell*, 96 N. Y. 467.) All the stockholders are presumed to have known of the expenditure of the moneys. (Note to case *In re C. & Y. Ry. Co.*, L. R., 4 Ch. App. 753; *C. G. M. Co.* v. *Platt*, 3 Daly, 263; *Jones* v. *G. & I. Co.*, 101 U. S. 622.) The mortgages were valid as to the personal property which they purport to cover. (Laws of 1878, chap. 163.)

RAPALLO, J. This action was brought for the foreclosure of two mortgages made by the corporation defendant to the plaintiff as trustee for bondholders, the first of such mortgages being dated November 1, 1880, to secure the payment of forty bonds of $1,000 each, and the second being dated February 5, 1881, to secure twenty like bonds of $1,000 each. All the bonds were payable to bearer on or before November 1, 1890, with semi-annual interest, and they recited that they were made to secure the payment of money borrowed by the company for the purpose of carrying on its business.

The two mortgages covered the real estate of the company, also certain tools, machinery, gas mains and chattels, also certain rights, privileges and franchises granted to the company by the corporation of the city of Yonkers, permitting the company to lay gas mains in the streets, and also the corporate rights and franchises of the company, including its right to be a corporation.

The company was organized under the General Manufacturing Law of 1848. Stockholders, owning at least two-thirds of the capital stock of the company, consented to the execution of mortgages upon its real and personal estate to secure said bonds, as required by chapter 517 of the Laws of 1864 and chapter 481 of the Laws of 1871, and their consents were duly filed, but no consent was given by any of the stockholders to the mortgaging of the "franchises, privileges, rights and liberties" of the company pursuant to chapter 163 of the Laws of 1878.

It appears from the findings of fact of the trial judge, that nine of said sixty bonds are still held by the plaintiff, unissued, and that the sum of $51,000, being the proceeds of fifty-one of said sixty bonds, was paid by the respective holders thereof to the said company after the execution of the mortgages, and before August 1, 1881, and was used in the payment of debts of said company contracted in carrying on its business after the execution of the mortgages ; but it is also found that such money was paid to the company only as its debts became due, and in payment thereof, and that the holders of said fifty-one bonds were respective purchasers for value.

The trial court found that the said mortgages were a lien upon and bound all the personal property, rights, privileges and franchises described therein. Exception was taken to this finding.

It is now claimed on the part of the appellants that the mortgage is not a lien either on the real or personal property of the company or upon its rights, privileges or franchises, and the ground upon which the invalidity of the whole mortgage is placed is that it was not given to secure debts existing at the time of its execution.

The language of the act of 1864 (Chap. 517, as amended by the act of 1871, chap. 481) is very broad. It authorizes any corporation founded under the General Manufacturing Law of 1848, to secure the payment of any debt which may be contracted by it in the business for which it was incorporated, by mortgaging all or any part of the real or personal estate of such corporation, and declares that every such mortgage shall

be as valid as if executed by an individual owning such real or personal estate, provided the written consent of stockholders owning at least two-thirds of the capital stock of such corporation shall be filed as directed by the act.

This provision effectually relieves such corporations from the restriction upon their corporate capacity to give any lien upon their property by mortgage or otherwise, imposed by section 2 of the same law of 1848, and, reading the two acts together, it is evident that such restriction is intended only to limit the general powers of trustees of such corporations, and subject them to the control of the stockholders, in the matter of giving mortgages or liens, and was not founded on any supposed policy of withholding from that particular class of corporations the full control of their property and the corporate power of disposing of or incumbering it, which is possessed by corporations in general.    With the prescribed consent of the stockholders, they are declared to be as competent as natural persons to secure the payment of their legitimate debts by mortgage upon their real or personal property.

This power has been the subject of consideration in several cases which have come before this court since the passage of the act of 1864, and the view has been repeatedly expressed in those cases that the power should be liberally construed, and that a substantial compliance with its conditions, according to their spirit and intent, was all that was required.    In *Carpenter* v. *Black Hawk Mining Co.* (65 N. Y. 43) decided by the Commission, it was held that it was not necessary that separate mortgages should be executed to each creditor to secure his debt, but that a single mortgage to one or more persons in trust for the security of all the creditors was proper, and that the mortgage might be given to secure bonds issued and delivered to creditors or sold to raise money to pay them.    In that case the board of directors of the company, in 1866, by resolution authorized the president and treasurer, on receiving the assent of stockholders required by law, to cause coupon bonds of $1,000 each to be issued, secured by a mortgage on the property of the company to the amount of $250,000, for

the purpose of meeting expenses in construction account and general indebtedness. The assent was given and the mortgage executed, reciting that its purpose was to secure money raised and to be raised for the general business and liabilities incurred in the management and improvement of the property, and carrying on the mining operations of the company. The bonds were issued and some of them were delivered to creditors of the company, others were sold and the proceeds applied in part to the payment of debts, and in part to the expense of working the mines after the issue of the bonds.

The action was brought to have the mortgage declared void and a sale under it restrained, and judgment was rendered for the plaintiff on the report of a referee, who held that the mortgage was invalid because it was not given to any creditor to secure a debt of the company ; that judgment was reversed at the General Term and the reversal was sustained by the judgment of this court, it being held by the Commission that the mode in which debts should be secured was left to the company ; that the mortgage might be directly to the creditors, or to trustees for their benefit, or to secure bonds issued and delivered to the creditors, or sold to raise money to pay them ; that as some of the bonds were used for those purposes the mortgage was, at all events, valid to the extent of the bonds which had been thus used, and was not invalid, even if also it covered bonds which were used for other purposes.

The learned commissioner delivering the opinion, (Earl, C.,) expressed the view that under the statute a mortgage could not be made merely to raise money to carry on the operations of the company. All the other members of the Commission concurred in the judgment, but they all declined, in terms, to express an opinion as to the validity or invalidity of the mortgage as a security for the bonds which were not delivered to pay debts, or used to raise money to pay debts, existing at the time the mortgage was executed. That question was thus left an open one, and it does not appear to have arisen in any sub-

sequent case in this State, though it is discussed in the case of *Jones* v. *Guaranty and Indemnity Co.* (101 U. S. 622).

Where money is lent to an individual or to a corporation authorized to borrow money, and the borrower at the time of the loan delivers his bond and mortgage as security for the repayment of the money so loaned, it can hardly be questioned that the bond and mortgage are given to secure a debt contracted by the borrower. The acts of 1864 and 1871 declare that where the requisite consent of stockholders is given, the mortgage shall be as valid to all intents and purposes as if executed by an individual. The only other restriction is that the debt secured by the mortgage must be one contracted in the business for which the corporation was incorporated. There is nothing in the statute which requires that it should have been contracted at any particular time. If it is contracted simultaneously with the giving of the security, and is a legitimate debt incurred in the business of the company, it comes within the letter of the authority conferred by the statute, which covers " any debt which may be contracted by it in the business for which it is incorporated." As to a mortgage given to secure future advances, different questions might arise, but where a bond secured by mortgage is given to the lender for money advanced at the time, the borrower becomes immediately indebted, and it would seem to be immaterial whether the money is applied by the borrower to the payment of some antecedent debt, or to other purposes for which he was legitimately entitled to borrow the money.

The only conceivable intent which could be attributed to the legislature of requiring that the power of mortgaging should be confined to the securing of debts other than those created simultaneously with the giving of the security, would be to put it beyond the power of the trustees or directors, even with the assent of the stockholders, to borrow money not needed for the payment of previously existing debts, and thus obtaining the control of funds which they might misapply. I fail to find any language in the act expressive of such an intent. It likens the power given to these corporations to that of an in-

dividual to mortgage his own property to secure any debt which he may contract, and there is no restriction upon this power except that the assent of stockholders must be obtained. In *Greenpoint Sugar Co* v. *Whitin* (69 N. Y. 328), it is said by CHURCH, Ch. J., at page 333, that the act of 1864 removed the restriction, substantially, imposed by the act of 1848, with a proviso requiring only that those interested, the stockholders, should consent; thus plainly evincing that the purpose and intent were to protect the stockholders from improvident or corrupt acts by the officers of the company ; that there is nothing showing that the legislative policy regarded the mortgaging of corporate property improper *per se*, but the policy adopted indicates a fear of its improper exercise and an intention to guard against it.  And again, at page 334, that the act of mortgaging is not deemed illegal, but the principal must assent in writing.

In that case the mortgage was given to secure the purchase-price of real estate conveyed to the company by the mortgagee on the same day the mortgage was executed, but which had been previously occupied by the company under a contract of purchase.

In *Rochester Savings Bank* v. *Averell* (96 N. Y. 467), the mortgage was given to secure $10,000 borrowed by the company from the bank at the time of the execution of the mortgage.  The feature existed in that case that the money was borrowed to pay certain debts of the company and was so applied.  The question did not arise in that case as to what the result would have been in the absence of that feature.

Adopting the comparison, suggested by the statute, with the act of an individual mortgaging his own property to secure the payment of his own debt, and supposing the case of a principal, having an agent authorized to borrow money to be used in the business of the principal, and that the principal should under that state of existing circumstances give a power of attorney to the agent empowering him to secure the payment of "any debt theretofore contracted, or which might be contracted by him in the business " of the principal, by mort-

gage on his real estate, can it be doubted that a mortgage given by the agent to secure money borrowed by him in the business of his principal, simultaneously with the giving of the mortgage security, would be within the terms of the power? I can see no reason for applying a different rule of construction to an authority in the same words, contained in a statute. But in the present case we are not under the necessity of deciding that question or determining what the result would have been if the bonds had been sold, or money raised thereon by the company for purposes other than the payment of existing debts. It appears from the findings, not only that the money paid to the company for the bonds was used in the payment of its debts, but that the money was so paid by the bondholders to the company only as its other existing debts became due. The bonds secured by the mortgage did not acquire vitality until they were issued to purchasers paying value therefor, and did not until then become liens upon the mortgaged property, consequently when the mortgage lien was created, it was, as to each bond issued, created for the purpose of paying debts then owing by the company, and was so applied. There is nothing in the act which requires that in the case of a trust mortgage to secure negotiable bonds to be thereafter issued, the debts authorized to be secured should be in existence at the time the mortgage and bonds are prepared and executed. Every conceivable intent of the statute is effectuated, provided the bonds are negotiated only for the purpose of securing or paying debts contracted before the negotiation of the bonds. Where a bond of this description, having no previous vitality, is delivered to a creditor of the company to pay or secure his debt, the delivery of the bond is the act by which his debt becomes secured. The security to the creditor then for the first time comes into being, and is as effectual as if the mortgage were executed at the same time with the delivery of the bond. The effect is the same if the bond is sold to provide means to pay a debt existing at the time of the sale, and the proceeds are paid to the creditor. As held in the case of *Carpenter* v. *Black Hawk Co.* (65 N. Y. 43),

the statute prescribes no form in which the mortgage shall be made. The mode in which the mortgage lien shall be created is left to the company. All that is required is that the lien should be given to secure a legitimate debt of the corporation, and any appropriate and convenient form for accomplishing that end may be adopted.

Our conclusion is that the judgment below should be affirmed in so far as it sustains the validity of the mortgage, as a lien upon the real and personal property of the company. But a further question is raised as to its validity as a mortgage upon its franchises.

In *Carpenter* v. *Black Hawk Co.* (65 N. Y. 50), it was held that a corporation could not, without some statute allowing it, either sell or mortgage its franchises, and that the result was that the mortgage before the court, in that case, was inoperative so far as it purported to convey the franchises of the company.

This power, which was not conferred by any of the previous statutes upon manufacturing corporations, was supplied by chapter 163 of the Laws of 1878, which enacts that any such corporation may secure the payment of any debt by mortgaging all or any part of its goods, or chattels, and also its "franchises, privileges, rights and liberties," provided the written assent of a majority of the stockholders, owning at least two-thirds of the capital stock of such corporation, shall first be filed.

The consent in the present case covered only the real and personal estate of the company, and contained no mention of its franchises, privileges, rights or liberties. This omission is, of itself, sufficient ground for holding the mortgage inoperative as to those rights.

The judgment appealed from authorizes the sale of the real and personal property, and also of all the rights, privileges, and franchises described in the mortgage. In so far as it authorizes a sale of the corporate franchises of the company, the judgment should be reversed.

We do not think that the act of 1878 operates as a repeal of the act of 1864, or the act of 1871, which authorizes the mortgaging of the real and personal property of the corporation,

with the assent of stockholders, owning at least two-thirds of the stock. The act of 1878 requires the assent of " a majority of the stockholders, owning at least two-thirds of the capital stock, etc." Whether the intention was to require the consent of a majority in number of all the stockholders of the company, as well as a two-thirds majority of the stock, it is not necessary now to determine, for we do not think that the act was intended to take away the previously existing power of the owners of two-thirds of the stock, to authorize the mortgaging of the real and personal property of the corporation, but only to give power to add to a chattel mortgage, a mortgage upon the corporate franchises. The alleged counter-claim set up in the answer was to the effect that some of the parties, who, at the time of the commencement of the action, were the holders of the bonds, were stockholders in other corporations, to whose interest it was to develop certain patented processes for manufacturing gas, and that they procured the corporation defendant to expend money and render services in developing such processes. There is no allegation that the bondholders so interested assumed any personal responsibility for such expenditure, nor do the allegations of the answer disclose any such liability. The exception to the exclusion of evidence, in support of the alleged counter-claim, is not well taken.

The judgment should be modified so as to exclude from the sale, thereby directed, the " franchises, privileges, rights and liberties " of the corporation defendant, and as thus modified, affirmed, without costs.

All concur, except EARL, J., not voting.

Judgment accordingly.