AUGUSTUS H. VANDERPOEL, as Substituted Assignee, etc., Appellant, v. JOHN J. GORMAN, as Sheriff, etc., Respondent.

An assignment for the benefit of creditors, made in this state by an insolvent foreign corporation, valid under the law of its domicile, will be recognized as valid here.

Barth v. Backus (140 N. Y. 230), distinguished.

Such an assignment is not violative of the provision of the act "in relation to stock corporations" (§ 48, chap. 564, Laws of 1890), which prohibits a transfer or assignment by a corporation in contemplation of insolvency; that provision refers solely to domestic corporations.

The right to make such an assignment exists inherently in all corporations, unless expressly forbidden, and said prohibition furnishes no legitimate

| 140 | 563 |
| j 152 | 66 |
| 140 | 563 |
| 154 | 526 |
| 140 | 563 |
| 156 | 201 |
| 156 | 472 |
| 140 | 563 |
| 159 | 277 |
| 140 | 563 |
| 166 | 423 |

evidence of the existence of a public policy in this state which forbids, in the case of a foreign corporation, the exercise of this inherent right.

In the absence of any statute or of a by-law of the corporation providing otherwise, such an assignment may be executed by the president and secretary under authority of its board of managers.

(Argued December 19, 1893; decided January 16, 1894.)

APPEAL from judgment of the General Term of the Court of Common Pleas for the city and county of New York, entered upon an order made August 23, 1893, which overruled plaintiff's exceptions and directed judgment in favor of defendant to be entered upon a verdict directed by the court.

This action was brought by plaintiff as substituted assignee for the benefit of the creditors of the North River Lumber Company, to recover from defendant the value of certain property levied on by him as sheriff of the county of New York, by virtue of certain attachments against the corporation.

The facts, so far as material, are stated in the opinion.

*Gibson Putzel* for appellant. Unless prevented by statute, any corporation, whether foreign or domestic, has the right and power to make an assignment for the benefit of creditors. (Wait on Insol. Corp. 133.) Section 4, chapter 18, title 4 of part 1 of the Revised Statutes does not apply to assignments made in this state by foreign corporations. (*Coates* v. *Donnell*, 94 N. Y. 168; *Wilkinson* v. *Binerle*, 41 N. J. Eq. 651.) The words of the statute, " any incorporated company," must, in the absence of all definition, be presumed only to refer to domestic corporations. (Laws of 1890, chap. 553; *White* v. *Howard*, 46 N. Y. 144.) The board of directors of the North River Lumber Company had authority to make an assignment for the benefit of creditors, and it was not necessary that the consent of the stockholders should be first obtained. (*Reichwald* v. *C. Hotel*, 106 Ill. 451; *Sargent* v. *Webster*, 13 Metc. 497; *De Camp* v. *Alward*, 52 Ind. 473; *Dana* v. *Bank of*

*the U. S.,* 5 W. & S. 223; *A. O. Co.* v. *N. A. O. & M. Co.,* 66 Penn. St. 375; *Kent* v. *Q. M. Co.,* 78 N. Y. 159; *Beveridge* v. *N. Y. E. Co.,* 112 id. 1.) It is not a legitimate presumption that the statute laws of other states are similar to our laws. On the contrary, the presumption is that the common law prevails there. (*Abell* v. *Douglas,* 4 Den. 305; *F. N. Bank* v. *F. N. Bank,* 77 N. Y. 331; *Throop* v. *Hatch,* 3 Abb. Pr. 27; *People ex rel.* v. *Brady,* 56 N. Y. 191; *Leonard* v. *C. S. Co.,* 84 id. 53; 9 Daly, 152; 46 Hun, 469; 34 id. 167.) The decisions of the Court of Appeals declaring that the act of 1850, prohibiting a corporation from setting up the defense of usury, applied to foreign corporations, do not avail the respondent in this controversy. (*Rosa* v. *Butterfield,* 33 N. Y. 665.)

*S. F. Kneeland* for respondent. The president and secretary of the defendant corporation had no implied authority, either with or without the assent of the board of trustees, to make a general assignment for the benefit of its creditors of the property of the corporation. (*People* v. *Ballard,* 56 Hun, 125; *Abbot* v. *A. H. R. Co.,* 33 Barb. 578; *Frothingham* v. *Barney,* 6 Hun, 372; *Taylor* v. *Earl,* 8 id. 1; *Blatchford* v. *Ross,* 54 Barb. 42; *M., etc., R. Co.* v. *M., etc., Co.,* 14 Abb. [N. C.] 108; *Copeland* v. *C. G. Co.,* 61 Barb. 60; *Stevens* v. *R., etc., R. R. Co.,* 29 Vt. 545; *N. O., etc., R. R. Co.* v. *Harris,* 27 Miss. 517; *R. Co.* v. *Allerton,* 18 Wall. 233.) An insolvent corporation, either domestic or foreign, cannot, under the laws of this state, make a valid assignment. (*Leavitt* v. *Curtis,* 15 N. Y. 9; *S. L. I. & T. Co.* v. *Packer,* 17 id. 52; *Rosa* v. *Butterfield,* 33 id. 665; *People* v. *Formosa,* 131 id. 478.) If the prohibition of the statute could be held not to include foreign corporations, then the law of the *situs* must govern, and the assignment herein, being in violation of a positive rule of such law, be held void. {2 Kent's Comm. 455; Story on Confl. of Laws, § 383; *Hanford* v. *Paine,* 32 Vt. 442–456; *Mumford* v. *Canty,* 50 Ill. 375; *Edgerly* v. *Bush,* 81 N. Y. 199–203; *Guillander* v.

*Powell,* 35 id. 657; *Smedley* v. *Smith,* 15 Daly, 421; *Warner* v. *Jaffray,* 96 N. Y. 248, 254; *Cole* v. *M. I. Co.,* 133 id. 164.) A corporation must close its career in its own domicile. (*Oliver* v. *W. H. C. M. Co.,* 10 N. Y. Supp. 771.) The General Assignment Act does not apply to corporations. (*Nicholson* v. *Leavitt,* 6 N. Y. 510.) The court never acquire l·jurisdiction to make the orders of August 12, 1891, and September 10, 1891, in the absence of any proof before it that the several requirements as to service of notice of application to remove assignee has been complied with. ⸰ And as no such proof existed, the said several orders were nullities and vested no title in plaintiff to the property in suit. (Laws of 1877, chap. 446, §§ 3, 6; Laws of 1878, chap. 318.)

PECKHAM, J. The North River Lumber Company was a company incorporated under the laws of New Jersey, and transacting its business in the city of New York. On the 24th of February, 1891, the corporation made in this state a general assignment to the predecessor of the plaintiff of all its property for the benefit of its creditors and without any preferences.

Subsequent to the assignment certain of its creditors commenced actions against it to recover the amounts of their debts respectively, and in those actions attachments were issued and delivered to the defendant, who was the sheriff of New York county, and he subsequently levied by virtue of such attachments upon property which was alleged to belong to the corporation.

The plaintiff as its general assignee has commenced this action to recover from the defendant the value of the property thus levied on by him. The question turns upon the validity of the general assignment of the corporation to the plaintiff. If it were a legal and valid act, it carried the title to the property in question to the plaintiff, and if not, then the defendant was justified in his levy. The defendant on the trial objected to evidence of the assignment, and urged as grounds for his objection (1) that a foreign corporation cannot, under the laws

of this state, while insolvent or in contemplation of insolvency, make a general assignment for the benefit of creditors; (2) that if such corporation could make that kind of an assignment it could not make it in the manner of this instrument, viz., by the signature of an alleged president and secretary; (3) there is no sufficient proof of any authority on the part of the persons executing this assignment to make a general assignment for the benefit of creditors.

The trial court sustained the defendant's objections, and upon appeal the judgment entered in defendant's favor was affirmed by the General Term of the New York Common Pleas. The plaintiff has appealed from such judgment of affirmance to this court.

The defendant's first ground of objection must mean that the courts of this state will not recognize as valid, so far as respects property within their jurisdiction, a general assignment of its property, made for the benefit of its creditors, by an insolvent foreign corporation. The law of the domicile of the foreign corporation may of course permit it, upon insolvency, to assign all its property to an assignee in trust for its creditors, and it also might permit it to make such an assignment through its agents, who were at the time domiciled in a foreign state. But the state which created the corporation could not exercise jurisdiction in another state where the corporation might have property, and in such case the question would be one for the state in which the property was situated to determine as to the validity of the attempted transfer of title to an assignee. Assignments of personal property which are valid by the law of the domicile of the assignor, are generally recognized as valid by the law of the state where the property may be situated, unless they violate its statutory law or its known and settled public policy. (Cases cited in *Barth* v. *Backus*,* decided by this court in Nov., 1893, and not yet reported.)

In the case just cited we refused to recognize the validity of the assignment of a foreign corporation to a foreign assignee as against those who took title to the property of the

* *Ante,* page 230.

assignor in this state by virtue of proceedings under our attachment laws. The refusal was based upon our holding that the law under which the general assignee of the Wisconsin corporation claimed title was in effect a bankrupt law enacted by the legislature of Wisconsin, and laws of that nature are within one of the admitted exceptions to the general rule which recognizes the validity of assignments of personal property if valid by the law of the domicile of the party making them. (Authorities in the case cited.)

There can be no doubt that an insolvent corporation could at common law make a general assignment in trust to an assignee for the benefit of its creditors. (*Haxtun* v. *Bishop*, 3 Wend. 13; *De Puyster* v. *Trustees of St. Peter's Church*, 3 Barb. Ch. 119, 124; *S. C.* on appeal, 3 N. Y. 238; 2 Mor. on Corp. § 802 and note.) Under the law of New Jersey, in which state the corporation was created, its right to make an assignment of this nature seems to be established. (*Wilkinson* v. *Bauerle*, 41 N. J. Eq. 635.) At any rate no statute of New Jersey prohibiting such an assignment was proved by defendant, and we cannot presume that the common law has been altered in New Jersey upon this subject without some proof to that effect.

The assignment of property by an insolvent corporation for the purpose of paying its debts is a very different action from so disposing of its property while solvent as to make its continued exercise of its franchises impossible. (*People* v. *Ballard*, 134 N. Y. 269, 294.)

The *Ballard* case was subsequently brought to the attention of this court on a motion for a re-argument upon the question whether such a sale or transfer of property as appeared to have been made by the corporation was not valid upon the ground that the corporation could not operate the business except at a loss, and it was not bound to do that. (136 N. Y. 639.) The question was left open for the reason mentioned in the opinion given upon denying the motion. The case is no authority for the proposition that an insolvent corporation cannot make a general assignment for the benefit of creditors.

As the common law permits such an assignment and the state of New Jersey also permits it, and as it does not appear that the charter or by-laws of this particular corporation prohibit it, we are left to the question whether there is any statute or public policy in this state which would be violated if the courts should recognize the validity of an instrument good at common law and good in the state which created the corporation.

The power of the legislature to impose terms upon a foreign corporation as a condition for granting it leave to do business within another state is admitted. (*Paul* v. *Virginia,* 8 Wall. 168; *Liverpool Ins. Co.* v. *Massachusetts,* 10 id. 566.)

The sole question now is as to what has been the legislative action of this state upon this subject. The defendant alleges that there is a statute of this state which prohibits such act on the part of a foreign corporation. The statute referred to is chapter 564 of the Laws of 1890, sec. 48. (Session Laws, p. 1075.) It is, in substance, the same as section 4, title 4, article 3, ch. 18, part 1 of the Revised Statutes (1 R. S. 603, § 4), after its amendment by subdivision 4 of section 1 of chapter 245 of the Laws of 1880. It provides, among other things, that no corporation shall make any transfer or assignment to any person whatever in contemplation of its insolvency, and every such assignment is declared to be void. We have no doubt that this section refers solely to domestic corporations. The whole of the chapter from which the section is taken is, in substance, a revision of the law relating to certain classes of corporations as contained in the Revised Statutes and their amendments, and it is plain that those statutes generally, if not in every provision, referred to domestic corporations only. This opinion is arrived at by a reference to the whole subject-matter treated of in this portion of the Revised Statutes, and it becomes apparent, from a perusal of those general provisions, that the statutes were designed for the government and regulation of corporations created by this state.

When the language used in the particular section is referred to it becomes still more apparent that it is only applicable to domestic corporations.

The legislature declares, as above stated, that certain transfers or assignments made by the corporation shall be void. What power had the legislature to enact any such provision as to a foreign corporation? There is nothing in the section limiting its scope and effect to such property as the foreign corporation might have within this State. It is a broad enactment affecting every assignment made by a corporation under the circumstances mentioned. Can it be supposed that the legislature had in mind a foreign corporation and intended to assume a jurisdiction to declare such an act, even when done outside this state, and in respect to property also outside of its boundaries, to be void and of no effect? This cannot be supposed, for we cannot impute to the legislature such ignorance upon the subject of its inability to give extra-territorial effect to its own laws. And if it had foreign corporations in mind when proposing to legislate upon the subject, and knew it could not affect the validity of such transfers outside this state, and intended to provide that such transfers should not carry the title to property of the corporation held within this state and subject to our jurisdiction, it must be clear that language somewhat appropriate to express such purpose would have been used. The language actually used was neither apt nor pertinent for this purpose. It is both appropriate and pertinent when applied to domestic corporations only.

The language of the section clearly implies full and complete jurisdiction over the whole subject-matter. It implies the right to forbid absolutely. It also implies the right to declare the consequences of a violation of the prohibition, not in regard to some particular property, but generally and absolutely. The legislature has such jurisdiction in the case of domestic corporations, while in the case of foreign corporations it has not. To render the section applicable to foreign corporations would be to discard the plain meaning of the language used. The provisions of the Revised Statutes (1 R. S. 591, § 9), as to transfers by a corporation when insolvent or in contemplation of insolvency, prohibiting them when made with intent to give preferences, etc., were said to apply only to

domestic corporations. (*Coats* v. *Donnell,* 94 N. Y. 168.)
We have no doubt of the correctness of the statement. The
same reasons are applicable in both cases, and if section 9 do
not apply to foreign corporations, nothing can be found in the
language of section 48 of the Laws of 1890 (cited *supra*)
which would extend it to other than domestic corporations. As
the prohibition is not contained in any statute of the state, we
are unable to discover any public policy of the state which
would stand in lieu of a positive statute, and prohibit our
recognition of the validity of this transfer.

It is urged that such a policy is to be found in this same
statute, even though it in terms applies only to domestic
corporations.

The argument is that if the state refuses to its own cor-
porations the privilege of making such an assignment, it surely
cannot be consistent with its policy to permit the exercise of
the same privilege by a foreign corporation. The statute
while only applicable to domestic corporations is thus used as
evidence of the public policy of the state with regard to
foreign corporations. If it were a question of the simple
grant of a privilege, it may well be that what this state denied
to its own corporations it would not grant to those from a
foreign state. It is not, however, the mere question of the
exercise of a certain privilege which is to be affirmatively
granted in order to exist. The right to make such an assign-
ment exists inherently in all corporations unless specially for-
bidden. In regard to domestic corporations it has been
specially forbidden. Does that prohibition furnish any legiti-
mate evidence of the existence of a public policy in this state
which forbids in the case of a foreign corporation the exercise
of this inherent right? It seems to us that it does not. The
two kinds of a corporation, domestic and foreign, stand with
reference to this subject in very different circumstances and
positions towards the state. What might be proper or neces-
sary in one case might be wholly inappropriate or impossible
of complete execution in the other. As to domestic cor-
porations we assume certain responsibilities arising out of the

very liberty given by the state for their creation or formation. We provide for their birth, for their regulation and government during life and for their death. Upon their dissolution, which no other power than the state itself, acting through its legislature or its courts, can pronounce, the whole power of the corporation ceases and the property which the corporation leaves passes under the dominion of the sovereignty which created it. Responsible for its creation, for its government and for its death, the state has assumed in such cases complete and full jurisdiction over the corporation and its property, and, accordingly, the state has in a series of statutory provisions made certain that the corporate property shall be distributed in accordance with its own ideas of justice. On the other hand, in the case of a foreign corporation, the same kind of responsibility does not obtain. Our courts cannot dissolve it, nor can we, by virtue of our laws, in any way affect its property situated outside of the state, nor call it to any account therefor. Hence, while as to a domestic corporation we provide for the distribution of its property equally to all its creditors, foreigners as well as residents, we could as to a foreign corporation simply affect the property which it had in this state.

It is true that even with regard to a domestic corporation we cannot give an extra-territorial effect to our laws. Property of a domestic corporation, situated outside of the state, would not be subject to our jurisdiction. In such case, however, the principle of comity operates, and we should expect recognition of the validity of a disposition of the personal property of a domestic corporation situated outside the state, provided it was valid by our law, unless it were subject to some of the well-known exceptions to such recognition. As to a foreign corporation with property here, if we refused to recognize as valid the disposition made of its property within this state, it would probably in that case remain subject to be seized by the vigilant creditor, resident or non-resident, and a preference be thus obtained which is at war with the policy of our state as to domestic corporations.

It is thus seen that there are differences of a marked character between a domestic and a foreign corporation in relation to this subject. The differences are so marked that the statute regarding domestic corporations can furnish no proof as to the existence of a public policy which, in the case of foreign corporations, should stand in the place of and be equivalent to that statute.

Again, this assignment is valid by the law of New Jersey, which is the domicile of the corporation. It provides for an equal distribution of all the property of the corporation among all of its creditors, being in this respect in entire conformity with our own policy regarding the distribution of the property of insolvent domestic corporations. Is not the argument quite strong under such circumstances which favors the application of the general rule that an assignment of personal property, valid by the law of the domicile of the owner, will be recognized as valid everywhere? Can it be said in such a case that the interests of our own citizens are in any manner neglected by their own state when they are to share equally in the assets with all the other creditors of the corporation? If it were a domestic corporation they would get no more than an equal rate of division. Can they be said to be legally harmed when they get the same rate of division under such an assignment? Are we not in such case only following the general doctrine which refers the validity of the transfer of personal property to the law of the domicile of its owner? It is true that the assignment in this case was made by the corporation through its officers in New York, where it was doing business, but nevertheless it was a New Jersey corporation, and the assignment was valid by the law of that state. Whether, if the law of New Jersey prohibited such an assignment, and it was then executed under the same circumstances in this state, it would be valid here, is a question not involved in this case, and, therefore, neither discussed nor decided.

It is said that our own creditors, that is, I suppose, those who reside in this state, may in this manner be defeated of satisfaction of their debts by the participation of foreign creditors

in the only accessible funds of the insolvent company. We have seen that our policy is just such a participation with regard to creditors of a domestic corporation. Why should we find fault with such a result in the other case? The General Term of the Supreme Court in the first department has decided that the statute, in relation to a transfer of any part of its property by a corporation in contemplation of insolvency and for the purpose of giving preferences, does not apply to a foreign corporation. (*Lane* v. *Wheelwright,* 69 Hun, 180.)

The same question is touched upon, although perhaps not necessarily decided in *Coates* v. *Donnell* (*supra*). In that case the agreement for the lien was made at the same time and as part of the agreement to make the advances, and such agreement was held valid. It was added, however, that if the act were regarded as the giving of a preference by a failing debtor, it was good because the law against preferences by an insolvent corporation did not apply to a foreign one.

Here there is no preference, and, hence, there is no occasion to examine the *Coates* case to see if the question of a preference in contemplation of insolvency was involved and decided in it. It may be that there is no difference in principle between an assignment of part of the property of a corporation to a creditor as a preferred payment of its debt to him and a general assignment of all its property to an assignee for the benefit of creditors and giving preferences, and that if the former be valid the latter must also be good. In regard to such a general assignment it has been urged that it ought to be held invalid because of the fact that the property of a corporation is a trust fund for the benefit of creditors, and that any creditor ought to have the right to resort to chancery to compel the application of this trust fund *pro rata* for the benefit of all creditors, upon the principle that equality is equity.

As the question does not arise in this case it is unnecessary to further pursue the inquiry.

The counsel for the defendant cites the statute prohibiting a corporation from setting up the defense of usury, and he suggested that it has been held to include foreign corporations.

(*Life Ins. Co.* v. *Packer*, 17 N. Y. 52.)   There is no doubt
that it was so intended and the language is apt and appropriate
to express the idea.   The legislature had perfect and complete
control in such respect over the foreign as well as over the
domestic corporation, and there was no reason for denying to
the statute its natural meaning, which would include a foreign
corporation when suing or being sued in the courts of this
state.   The case of *In re Estate of Prime* (136 N. Y. 347) is
an authority in favor of the view here taken.   It is there
stated that generally a statute giving powers and privileges to
corporations must, in the absence of plain indications to the
contrary, be held to apply only to domestic corporations.
The remark was made in the case that a general law of the
state prohibiting corporations from exercising particular
powers would operate upon foreign corporations, not because
the act *ex proprio vigore* would bind such a corporation,
but for the reason that the exercise of such a power by the
foreign corporation would violate the public policy of the
state indicated by the general restraint imposed upon our own
corporations.   Considering the question which was under dis-
cussion and the facts which called forth the remark, it is
entirely plain that the proposition as really intended is per-
fectly sound.

If the exercise of certain powers by a foreign corporation in
this state would violate our public policy, there is no doubt
that the corporation could not here legally exercise such
powers, and the fact that it did violate our public policy might
in many cases be proved by our statute in regard to our own
corporations.   But it was not intended to assert that in all
cases where a statute did prohibit corporations from doing
certain things, it necessarily included foreign corporations, or
that such corporations could not thereafter exercise any
power prohibited to a domestic corporation, because in such
case its exercise by a foreign corporation would be a violation
of a public policy evidenced by the statute.   I think I have
shown in the case at bar that the difference between the two
classes of corporations, with reference to the thing prohibited

to the domestic corporation, precludes this kind of proof of a public policy in this state upon this subject with regard to a foreign corporation. We think there is no such public policy, and so far as this ground is concerned, we have no doubt that the assignment is valid.

As to the other grounds of invalidity, we are of the opinion that there is nothing in them. The corporation had the power to make an assignment. It was a corporate act and neither the statute nor any by-law, so far as the record shows, provided that it should be otherwise done than by the president and secretary or treasurer, under the authority of the board of directors. This sufficiently appears to have been so done and that is enough. (*Beveridge* v. *Elevated Railroad Co.*, 112 N. Y. 1.)

The judgment should be reversed and a new trial ordered, costs to abide the event.

All concur, except BARTLETT, J., not sitting.

Judgment reversed.