(38 App. Div. 323.)

### In re HULBERT BROS. & CO.

(Supreme Court, Appellate Division, First Department. March 24, 1899.)

1. FOREIGN CORPORATIONS—ASSIGNMENT FOR CREDITORS—PREFERENCE—VALIDITY—FOREIGN LAW—PRESUMPTION.

In the absence of .evidence as to the law of another state invalidating a general assignment by a corporation preferring creditors, the common law will be presumed to prevail, and the assignment held valid.

2. SAME—RECOGNITION AND ENFORCEMENT—STATE COMITY.

A foreign corporation's general assignment, preferring creditors, valid in the state of its domicile, not being inconsistent with any statute or the public policy of New York, will be recognized and enforced in New York, though it would be invalid under the laws of this state if made by a domestic corporation.

3. SAME—ACKNOWLEDGMENT.

The acknowledgment of a general assignment by a foreign corporation for the benefit of creditors stated that the president appeared before a notary, and, on being duly sworn, deposed that he was president thereof, and that the seal affixed was the corporation's seal, and that the instrument was signed in its behalf by authority of its board of directors and himself, and he acknowledged the instrument to be its free act and deed. *Held*, that the acknowledgment was sufficient.

Appeal from special term, New York county.

Application by William M. Bulkley, as trustee of the E. C. Meacham Arms Company, under an assignment for the benefit of creditors, for the modification of an order entered on a judicial accounting of a receiver of Hulbert Bros. & Co. to direct payment to him, as trustee, of a claim owned by his assignor. From an order denying the motion, petitioner appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, O'BRIEN, and INGRAHAM, JJ.

John Larkin, for appellant.

James M. Kerr, for respondents.

INGRAHAM, J. This proceeding was commenced for the voluntary dissolution of Hulbert Bros. & Co., a domestic corporation. A receiver was appointed, and subsequently, on February 7, 1898, the receiver filed his account, with a list of the claims against the said corporation which had been filed with him. A referee was appointed to settle the accounts of the receiver, who made his report, which was, on May 27, 1898, duly confirmed. By the order entered confirming such report it was adjudged that the E. C. Meacham Arms Company, a foreign corporation, was a creditor to the amount of $7,929.09, and the receiver was directed by the said order to distribute the balance of the money remaining in his hands among the creditors of the corporation therein named, one of whom was the said E. C. Meacham Arms Company, for the proportion which the aggregate amount of the said claim bears to the balance of the said sum to be distributed.

The said order contained the further provision that, "where said claims have heretofore been assigned, said receiver is authorized to pay the dividend to such assignees respectively." It further appeared that the receiver of this domestic corporation was appointed on September 29, 1896, as temporary receiver, and as permanent receiver on August 5, 1897; that the said Meacham Arms Company, a creditor of this domestic corporation, was a foreign corporation, organized and existing under the laws of the state of Missouri; that on December 20, 1897, the said Meacham Arms Company duly made and executed a general assignment for the benefit of its creditors to one Marshall F. McDonald, of St. Louis, Mo., which was duly acknowledged on December 21, 1897, and was recorded in the office of the recorder of deeds for the city of St. Louis on December 22, 1897; that by that assignment the said E. C. Meacham Arms Company did "bargain, sell, transfer, convey, and set over unto the said party of the second part, his successors and assigns, in trust, the following property, to wit, all the choses in action, book accounts, promissory notes, and other evidences of debt, and all other property rights and contracts of whatever kind and description, and all property, whether real, personal, or mixed (it being the intention and object of this conveyance to convey to said second party, and to include herein, all the property and assets of and belonging to said first party), owned by and belonging to the said party of the first part, whether located, situated, or contained in its place of business at No. 306 North Fourth street, St. Louis, Missouri, to have and to hold the same unto said party of the second part, and his successors forever," in trust, however, for the benefit of the creditors of the said corporation, certain of the creditors being preferred by said assignment; that the said McDonald, the assignee, accepted the said trust, proceeded to take possession of the property conveyed by the said assignment, and administered the same until his death, on April 5, 1898, and that thereupon, and on or about April 6, 1898, by an order of the circuit court of the state of Missouri, one William M. Bulkley, of the city of St. Louis, was appointed trustee to execute the said deed of trust in place of the original trustee upon the execution of a bond in the penalty of $30,000, and that the said substituted trustee was, by the order appointing him, vested with all the power and authority of the original trustee, and that the said Bulkley, as trustee, was ordered and directed to take possession, charge, and control of all the assets of the trust estate conveyed by the said deed which remained unadministered. There can be no doubt, I think, that if this foreign corporation had transferred this account against this domestic corporation, by an assignment specifically describing it, to an assignee named, such transfer would have been valid, and would have vested in the assignee the demand against the corporation Hulbert Bros. & Co., and would have entitled the assignee to collect the amount of the dividend from the receiver. Under the terms of the order directing the payment by the receiver, such an assignee would have been entitled to the dividend from the receiver. The instrument transferring this claim against the domestic corporation was a general assignment of the property of the corporation to a trustee for the benefit of creditors; but this general assignment

was sufficient upon its face to transfer to the assignee the claim or demand against this domestic corporation unless the law of the state of Missouri, the domicile of the foreign corporation (assignor), and the place where the assignment was executed, made such assignment void. There was no evidence offered in the court below as to the law of the state of Missouri, nor was there evidence that by the law of that state such assignment was not a valid, legal transfer of the property of the assignor; and, in the absence of such proof, the rules of the common law will be deemed to prevail, and the validity of this assignment in the state of Missouri must be determined by the common law. It is a general rule that the validity of a transfer of personal property is governed by the law of the domicile of the owner. This rule applies to a transfer by a voluntary assignment by a debtor of all his property for the benefit of creditors, as well as to a specific transfer by sale or contract; and the title of such assignee, valid by the law of the domicile, will prevail against the lien of an attachment issued and levied in another state or country subsequent to the assignment in favor of a creditor in such other state or country, whether a citizen or nonresident, upon a debt or chattel belonging to the assignor, embraced in the assignment. This rule does not apply to a transfer of personal property in invitum under foreign insolvent or bankrupt laws, good according to the law of the jurisdiction where the proceedings were taken. Such a transfer, by operation of law, will not be recognized in another jurisdiction, where it comes in conflict with the rights of the creditors of such other jurisdiction who have acquired liens upon the property of their debtor, although such liens were acquired subsequent to, and with notice of, the transfer in insolvency or bankruptcy. Barth v. Backus, 140 N. Y. 235, 35 N. E. 425. The reason of the distinction here taken is apparent. Where the transfer of the title to property is by the voluntary act of the owner, evidenced by a deed or assignment, the right of the owner of the property to make a disposition of it is recognized, and his voluntary transfer of the property, valid by the law of his domicile, where the deed or assignment was executed, transfers a good title to the property, wherever situated. Where, however, the transfer is not the voluntary act of the owner of the property, but by virtue of the law of the domicile of the owner, the transfer of property in a foreign state depends upon the enforcement of the foreign law, and requires that it should be given an extraterritorial operation which the rules of comity do not require to be given to the prejudice of the citizens of the state in which the property is situated. The right of the owner of property to dispose of it is recognized, but the right of a foreign state to step in and dispose of the property of a resident of that state, where such disposition would be to the prejudice of citizens of the state where the property is situated, is not recognized. It seems to be settled that at common law a general assignment in trust for the benefit of creditors may be made by an insolvent corporation (Vanderpoel v. Gorman, 140 N. Y. 568, 35 N. E. 932); and this right to make an assignment for the benefit of creditors includes the right to prefer one creditor of a corporation. Such a preference is not unlawful. "The right of a failing debtor to prefer one creditor to an-

other in the distribution of its property, while it has been often regretted, is recognized both in courts of law and equity. * * * A corporation possesses, in this respect, the same right as an individual." Coats v. Donnell, 94 N. Y. 168. In the absence, therefore, of any proof of the laws of the state of Missouri restricting the right of this corporation to make a general assignment for the benefit of creditors with preferences, it must be held that the rules of the common law prevail, and that such a general assignment is valid.

The only remaining question is whether the recognition of the title under this assignment would contravene the statutory law of the state, or be repugnant to its general policy. Section 48 of the stock corporation law (Laws 1892, c. 688) prohibits a corporation from making any conveyance, assignment, or transfer of any property when the company is insolvent, or its insolvency is imminent, with intent to give a preference to any particular creditor over another. But it is settled that this section is applicable to domestic, and not to foreign, corporations. Vanderpoel v. Gorman, 140 N. Y. 569, 35 N. E. 932. No statute to which our attention has been called declares that such an assignment made by a foreign corporation shall be invalid. Chapter 384 of the Laws of 1897, by which an additional section is added to the stock corporation law, does not attempt to define what transfers by a foreign corporation would be illegal. That section provides that the officers, directors, and stockholders of a foreign corporation transacting business within this state, except moneyed and railroad corporations, shall be liable, under the provisions of the chapter, in the same manner and to the same extent as the officers, directors, and stockholders of a domestic corporation, for an illegal transfer of the stock and property of such corporation when it is insolvent, or its insolvency is threatened, and that such liability may be enforced in the courts of this state in the same manner as similar liabilities imposed by law upon the officers, directors, and stockholders of domestic corporations. To bring a transfer under the provisions of this act, it must be shown to be an illegal transfer of the stock and property of such corporation, and there is nothing in the act that makes a transfer by a foreign corporation illegal which, before the passage of the act, was legal. This section would not apply for the additional reason that it is confined to foreign corporations transacting business within this state, and there is no evidence that this foreign corporation ever transacted business here. Indeed, it may be said that the legislature of this state would have no power to restrict the authority of a foreign corporation not transacting business within this state from exercising the power vested in it by the law of the state of its domicile; and while it is undoubtedly true that this state could refuse to recognize and enforce a transfer of property in this state by a foreign corporation which, though valid in the state of its domicile, was opposed to the policy of this state, to justify such action there must be a clear declaration that the state had adopted a policy in relation to the transfer of property within this state which would be opposed or invalidated by the recognition of the right of a foreign corporation to exercise this power authorized by the state which had created it,

and in which the act or transfer was executed. In this connection there seems to me to be a distinction between an act of a foreign corporation doing business in this state, where the act sought to be invalidated was performed here, and when such a corporation was not doing business within this state, and where the act was performed in the state of its domicile. The legislature of this state would have undoubted authority to regulate the act of a foreign corporation performed or attempted to be performed within this state, and in which property located within this state was involved. It would be powerless to declare invalid or illegal an act of a foreign corporation performed in the state of its domicile. It might refuse to recognize or enforce in this state such an act, but, to justify the courts in taking such a position, a legislative declaration of a policy inconsistent with the enforcement of the act of a foreign corporation valid in the state of its domicile must exist. The remarks of Judge Peckham in the case of Vanderpoel v. Gorman, 140 N. Y. 574, 35 N. E. 932, in which the question of the validity of a general assignment by a foreign corporation with preferences made in contemplation of insolvency was reserved, evidently related to such an assignment, which, although made by a foreign corporation, was actually executed in this state. At page 575, 140 N. Y., and page 936, 35 N. E., the learned judge says:

"If the exercise of certain powers by a foreign corporation in this state would violate our public policy, there is no doubt that the corporation could not here legally exercise such powers, and the fact that it did violate our public policy might in many cases be proved by our statute in regard to our own corporations. But it is not intended to assert that in all cases where a statute did prohibit corporations from doing certain things it necessarily included foreign corporations, or that such corporations could not thereafter exercise any power prohibited to a domestic corporation, because in such case its exercise by a foreign corporation would be a violation of a public policy evidenced by the statute. I think I have shown in the case at bar that the difference between the two classes of corporations, with reference to the thing prohibited to the domestic corporation, precludes this kind of proof of a public policy in this state upon this subject with regard to a foreign corporation. We think there is no such public policy, and, so far as this ground is concerned, we have no doubt that the assignment is valid."

An act of a foreign corporation, performed within this state, which violates the public policy of the state, might be void, as stated by Chief Justice Andrews in Re Prime, 136 N. Y. 362, 32 N. E. 1095, "for. the reason that their [the foreign corporations'] exercise of such powers here would violate the public policy of the state indicated by the general restraint imposed upon our own corporations." It seems to me, however, that it would not necessarily follow that, because the legislature had established a general policy which would invalidate the act of a corporation in this state as contrary to such policy, the same act would be void if performed within the jurisdiction of the sovereignty which had created the corporation, when such act was valid within that jurisdiction; and, such act being valid there, the principles of comity require that we should give effect to such act executed in the state that had created the corporation, and which was valid there, unless there is a settled policy of this state which requires a court to refuse to recognize a transfer of property

which was valid where the transfer was made because a portion of the property so transferred was located in this state. To show such a public policy, it would require something more than to show that domestic corporations were prohibited from making such a transfer. Where a foreign corporation attempts to act in this state, the validity of the act itself is subject to the law of this state. Where a corporation assumes to act within another jurisdiction, the validity of the act must be determined by the law of the jurisdiction which created the corporation, or the jurisdiction in which the act was performed. Whether this state will recognize the act as sufficient to transfer property located within this state is to be determined by the law of this state; but certainly, in the absence of a distinct declaration of the establishment of a public policy which would be inconsistent with the recognition of the validity of such a transfer, the principles of comity require the courts to recognize the validity of the transfer, and enforce it. I know of no express prohibition or public policy of this state which requires us to refuse to recognize a valid transfer of property by a foreign corporation in the state of its domicile, or to refuse to give such a transfer full force and effect.

· The respondent also objects to the sufficiency of the acknowledgment of this instrument. It is alleged in the moving papers that this foreign corporation duly made and executed a general assignment for the benefit of all its creditors; that the said deed of assignment was duly acknowledged on December 27, 1897, and was, on the 22d day of December, 1897, duly filed and recorded in the office of the recorder of deeds in the city of St. Louis, Mo.; that the said deed conveyed to the assignee, as trustee, all the assets, real and personal, wherever situated, of such corporation, in trust for its creditors, and that the said assignee accepted said trust, and proceeded to take possession of the assets conveyed by said deed, and administered the same up to his decease, April 5, 1898, and at the time of the death of the deceased he had not fully administered said trust; that thereupon, and on or about the 6th day of April, 1898, by an order of the circuit court of St. Louis, one William M. Bulkley, of said city of St. Louis, was appointed trustee to execute said deed of trust in lieu and place of said original trustee. An exemplified copy of this deed of trust was introduced in evidence, duly certified by the recorder of the city of St. Louis, under a stipulation by the parties that "for the purposes of this motion, and all proceedings taken upon any order to be entered upon the same, that the aforesaid records shall be considered as duly certified, as required by the Code of Civil Procedure." The certificate of acknowledgment annexed to this deed of trust certifies that the president of the corporation appeared before the notary, and, upon being duly sworn, deposed that he was president of the aforesaid E. C. Meacham Arms Company, a corporation, and that the seal affixed to said instrument is the corporate seal of said corporation, and said instrument was signed and sealed in behalf of said corporation by authority of its board of directors, and said E. N. Beach acknowledged said instrument to be the free act and deed of said corporation. The order of the circuit court of Missouri was also introduced in evidence,

properly authenticated under the said stipulation, by which the court finds that the said deed of trust conveyed to the said Marshall F. McDonald, as trustee, all its assets, real and personal, wherever situated, in trust for the creditors of said E. C. Meacham Arms Company, designated and described in said deed of trust, and that the said McDonald accepted said trust, and proceeded to take possession of the assets conveyed by said deed, and administered the same up to his decease; that the said trustee did theretofore, to wit, on April 5, 1898, depart this life without having fully administered said trust, or completed the performance of the duties imposed on him by said deed. It was, therefore, ordered by the court that the said William M. Bulkley, of the city of St. Louis, be appointed trustee to execute the said deed of trust in lieu and place of the said original trustee, and with all the power and authority in said deed vested in said original trustee; and that said William M. Bulkley, as trustee, aforesaid, be ordered and directed to take possession, charge, and control of all the assets of the trust estate conveyed by said deed which remained unadministered. We have here an assignment, properly acknowledged on behalf of the corporation, with proof that the said instrument was signed and sealed by authority of its board of directors, and an adjudication by a court of competent jurisdiction of the domicile of the corporation that by this deed of trust the corporation conveyed to the assignee, as trustee, all of its assets, real and personal, wherever situated, which would include this claim in controversy. None of these allegations are denied by the respondent, and we think that upon the record the execution of this instrument was properly proved. We think, therefore, that upon the facts appearing before the court below the title to this claim against the property in the hands of the receiver vested in the assignee under this assignment, and that the motion should have been granted.

The order appealed from should be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs. All concur; BARRETT, J., in result.