[Civ. No. 6035. Third Appellate District.—April 26, 1938.]

W. J. McLEAN et al., Appellants, v. W. W. TUCKER et al., Respondents.

Porter C. Blackburn for Appellants.

Gerard Remington for Respondent.

PLUMMER, J.—This action was prosecuted in the trial court for the purpose of obtaining a declaratory judgment

under the provisions of section 1060 of the Code of Civil Procedure, and for the purpose of having construed the legal effect of the execution of a certain deed and its delivery in escrow in California by a Nevada corporation.

A second cause of action is set forth in the complaint alleging the invalidity of the deed under section 45 of the Nevada Domestic Corporation Act of 1925.

The plaintiffs in the action are stockholders and officers of a certain mining corporation organized under the laws of the state of Nevada in the year 1926, known as and called the "Cave Springs Mining Corporation". Thereafter, said mining corporation continued transacting business in the state of California until about October 5, 1932. Some of the plaintiffs are creditors of the corporation. The corporation, while doing business in the state of California, never qualified under the laws of the state of California to do business therein.

During the time that the corporation was carrying on mining operations in the state of California it became indebted to the defendant in a sum between $5,000 and $6,000. On or about June 30, 1931, the defendant obtained a judgment against the corporation in the courts of the state of California. The property of the corporation is situate in the county of San Bernardino, and consists of certain patented mining claims and certain mining claims, unpatented.

After obtaining the judgment just mentioned the plaintiff had an execution issued thereon, and was about to levy the execution upon the mining claim just referred to; that in order to stay execution upon the property of the corporation a deed was executed by the corporation to the respondent in this action, conveying the mining premises belonging to the corporation to the defendant. This deed was placed in escrow. An agreement was entered into between the corporation and the defendant, relative to placing said deed in escrow, with directions to deliver the deed to the defendant in the event that the judgment in favor of the defendant was affirmed on appeal, and that during the time elapsing before said appeal should be determined, the defendant would not have any execution levied upon the mining claims belonging to the corporation. It was further agreed that if the judgment which the defendant had obtained against the corporation should be affirmed on appeal, then and in that

event the deed placed in escrow should be delivered to the defendant, conveying to him the title to the mining premises heretofore referred to.

The deed and the agreement appear to have been executed in pursuance of a resolution regularly adopted by the officers of the corporation. The agreement in question is in the following words and figures:

"It is hereby agreed between W. W. Tucker and Cave Springs Mining Corporation, a corporation, in consideration of their mutual agreements herein contained,

"1. That by mutual consent of all parties, Action No. W-111-J, entitled *H. Kimber, plaintiff,* v. *Cave Springs Mining Corporation, W. W. Tucker, defendants,* pending in the United States District Court, Southern District of California, Central Division, has been dismissed without prejudice.

"2. That there has been deposited with Marion P. Betty, of 215 W. Fifth St., Los Angeles, California, in escrow, a certain deed executed by Cave Springs Mining Corporation, a Corporation, to W. W. Tucker, covering certain mining property in San Bernardino County, State of California, on the following conditions: That in event a certain appeal case now pending as the 2nd Civil No. 8275, in the District Court of Appeal, 2nd Appellate District, State of California, entitled, *W. W. Tucker, plaintiff and respondent,* vs. *Cave Springs Mining Corporation, a Corporation, defendant and appellant,* (139 Cal. App. 213 [33 Pac. (2d) 871]) shall be dismissed or finally terminated in favor of the said plaintiff, then said deed shall be delivered to said W. W. Tucker; that if said appeal shall be terminated in favor of defendant, then said deed shall be returned to said Cave Springs Mining Corporation.

"3. That the said W. W. Tucker will, and by these presents does agree to place in escrow along with the said deed and this contract, a release of the execution issued out of the Superior Court of the County of Los Angeles, State of California, in the case of *W. W. Tucker* vs. *Cave Springs Mining Corporation,* No. 303–625, to abide the determination of the appeal prosecuted by the defendant in said cause; and the said W. W. Tucker agrees that pending the said appeal that he will not cause to be levied any further executions under and by virtue of said judgment if, in the event the said appeal so prosecuted by the defendant in the above entitled

cause be determined in favor of the plaintiff, then in that event the said W. W. Tucker shall have returned to him the said release from execution of the said property, but if the said appeal shall be determined in favor of the appellants, said release of execution shall be delivered to the said defendant corporation.

"4. It is further understood and agreed that in the event that any time pending the terms of this escrow, to-wit, the final determination on appeal of the above cause, that there shall be a sale for the property involved in the said action, and by the terms of the said sale, cash shall be deposited, it is the understanding of the parties hereto that the said W. W. Tucker will accept in lieu of all of the rights herein mentioned in his favor, the full amount of his judgment, whereupon the said W. W. Tucker shall issue full satisfaction of his said judgment, and all papers deposited herein shall be delivered to the said Cave Springs Mining Corporation without any further right thereto or claims against the said Corporation, except the rights of the said W. W. Tucker to participate as a stockholder therein."

This agreement was signed on the 15th day of July, 1932, and acknowledged on September 1, 1932 (signatures and acknowledgment omitted herein). The deed in question appears to be simply an ordinary grant, bargain and sale deed conveying the different mining claims to the defendant in this action.

To the complaint filed in this action the defendant first filed an answer, and also a cross-complaint, alleging the purposes for which the deed was executed, to wit: In effect, to secure a stay of execution pending the determination of the appeal in question, it being provided that if the appeal were decided in favor of the defendant, the plaintiff in that action, then and in that case the deed conveying title should be delivered to him according to the terms of the escrow agreement, and praying the court for delivery of the deed and the quieting of his title thereto. The defendant had judgment and the plaintiffs appeal.

While the judgment does not specifically set forth the rights of the parties as a declaratory judgment, under the provisions of section 1060, *supra,* it does in effect determine the legal rights of all of the parties thereto by decreeing that the deed should be delivered to the defendant, and his title to the

premises quieted, as such decree excludes any right or title of the corporation to the premises, and also any right or title. of the plaintiffs in this action to any portion of the mining properties conveyed by the deed to the respondent in this action.

The chief contention on the part of the appellants is that the deed of conveyance was and is void under the provisions of section 45 of the Nevada Domestic Corporation Act of 1925. That section of the act is as follows:

"No corporation which shall have refused to pay any of its notes or other obligations, when due, in lawful money of the United States, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash. No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it, or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid. Every person receiving, by means of such prohibited act or deed, any property of a corporation, shall be bound to account therefor to its creditors or stockholders. No holder of stock of any corporation not fully paid shall make any transfer thereof to any person in contemplation of the corporation's insolvency. Every transfer or assignment or other act done in violation of the foregoing provision of this section shall be void. No such conveyance, assignment or transfer shall be void in the hands of a purchaser for a valuable consideration without notice. Every director or officer of a corporation who shall violate, or be concerned in violating any provision of this section shall be personally liable to the creditors and stockholders of the corporation of which he shall be a director or an officer to the full extent of any loss, they may respectively sustain by such violation."

It is contended on the part of the appellants that the section to which we have referred, being a part of the general corporation laws of the state of Nevada, became a part of, and entered into the charter incorporating the Cave Mining Cor-

poration, and that the provisions of said act are and were binding upon the corporation doing business in the state of California. This contention, however, does not appear to be well taken. While there appears to be some confusion in the language of text-writers as to what constitutes the charter of a corporation, it seems to be pretty well settled that a foreign corporation doing business in the state of California is subject to the laws of the state of California as to the business therein transacted, and unless the charter provisions of the corporation contain limiting clauses, general statutes of the state where the corporation is organized do not control.

Respondent first calls our attention to section 345 of the Civil Code, to the effect that the execution of the escrow agreement and deed is not an *ultra vires* act as between the corporation and the defendant. It may be here stated that the sufficiency of the consideration is not raised by the pleadings, but is in some measure attempted to be raised by the testimony, to the effect that the property in question was much more valuable than the sum of $5,000, or whatever might be the total judgment obtained by the defendant, including his costs. This testimony we have read, and while the court made no finding thereon, it is not of such a character as would support a finding fixing the value of the property at any sum whatever. The testimony is simply speculative, apparently based upon a tentative contract for the sale of property, which common knowledge teaches us is dependent upon the value of the property as shown by future development. The mine itself had stood idle for a number of years.

The agreement which we have set forth gave the appellants in this action many months of time within which to find a purchaser. We may also here state that no cash offer was ever in fact made by the appellants, by the corporation, or by anyone in behalf of the appellants, or in behalf of the corporation, to the defendant, as provided in the agreement. The testimony of the witness as to the cash offer was to the effect that he had $500 in the bank and that payment was to be strung along as it might be secured from the intending purchaser. This is not fully explained in the testimony, but there is sufficient there to show that the so-called cash offer was wholly without merit or legal effect.

The judgment in the case referred to was finally affirmed upon appeal, and thereupon the plaintiffs in this action notified the escrow-holder not to deliver the deed to which we have referred. The escrowholder filed a petition in intervention for the purpose of having the court determine whether or not he should or should not deliver the deed according to the escrow agreement.

In section 8550, Fletcher's Cyc. on Corporations, we find the following:

''But where there is nothing in the charter of the foreign corporation, or in the laws of the state where it is doing business, prohibiting it from so doing, it may execute an assignment or a mortgage giving a preference to one or more creditors. Since insolvency laws have as a general rule no extraterritorial operation, a foreign insolvent corporation may make a valid assignment with a preference to creditors in the state where it is doing business, if the laws of such state permit, although such preferential assignments would be invalid under the laws of the corporation's domicile.''

That the laws of California govern in the instant case we may cite 14 A. C. J., page 919, section 3099, as follows:

''State laws authorizing or forbidding preferences have no extraterritorial force, but are intended to operate only with respect to property subject to the control of the courts of the State where the laws are in force. And in accordance with the view that the laws of a State forbidding preferences are not binding upon the courts of other States, and do not affect the rights of the creditors of an insolvent corporation to secure and collect their claims by any and all methods known to the laws of that State, a corporation organized under the laws of a State which forbids preferences by insolvent corporations, but which is doing business solely in another State, where all its property is located, and the laws of which State permit such preferences, may prefer *bona fide* creditors who are nonresidents of the State where the corporation was organized by executing judgment notes to them and suffering judgment to be taken thereon in the courts of the State where the corporation is doing business. And it has similarly been held that an insolvent corporation organized under the laws of a State which permits preferences by insolvent corporations and doing business in another State where its property is situated and the laws of which also

permit preferences may execute a valid judgment note in another State whose laws prohibit preferences to a resident thereof, who is a *bona fide* creditor with the intent that judgment thereon shall be taken in the State where the property of the Corporation is situated, with intent that such property shall be appropriated to its payment; and where a Corporation is not prohibited· by its charter from making a preference of creditors, the enactment of a statute in the state where it was incorporated forbidding preferences, does not prevent it from preferring creditors in another state by confession of judgment where that method of preference is permitted. A mortgage by an insolvent corporation covering property in a State other than that in which it was created for the purpose of preferring creditors is not enforceable if the laws of that State forbid preferences, although the laws of the state in which the corporation was created do not. Conversely, the fact that the transfers of property in violation of the laws of the forum were made in another state does not render the act less fraudulent in law.''

This statement of the law is supported by the opinion in the case of *Gillis* v. *Pan-American Western Petroleum Co.,* 3 Cal. (2d) 249 [44 Pac. (2d) 311].

In section 8318, Fletcher's Cyc. on Corporations, the rule relative to a corporation doing business in the state other than that in which it is formed is stated as follows:

''It is held that it is the charter alone which by the law of comity is recognized and enforced in other jurisdictions, and not the general legislative or judicial decisions of the State in which the corporation is formed. Regulations ·or decisions of a sister-state are controlling only within its own limits, and such state has no power to give them force or effect in other jurisdictions.''

To the same effect is the case of *Vanderpool* v. *Gorman,* 140 N. Y. 563 [35 N. E. 932, 37 Am. St. Rep. 601, 24 L. R. A. 548], where we find the following:

''The question of the validity of an attempted transfer of title to an assignee for creditors by a corporation organized in one state and doing business in another, is for the state in which the property is situate. Property of a domestic corporation situated outside of the state would not be subject to our jurisdiction.''

The court, among other things, found as follows:

"That there was no proof or claim that said deed or agreement were made with intent to hinder, delay or defraud the creditors of the corporation."

The court further found that Tucker had performed and complied with all the terms of the agreement, and also that no damage or loss had been suffered by the corporation by reason of any act of the defendant Tucker. The court also found the purposes for which the agreement and deed were executed, to wit: To stay execution upon the judgment lien which had been obtained by the said W. W. Tucker.

It further appears from the record that the purpose of securing the stay of execution was to enable the corporation, if possible, to make sale of the property, and that the defendant Tucker desisted from making sale of the property, as evidenced by the agreement, as he otherwise might have done under his judgment lien, and obtain title to the property under execution sale in the event that no one offered a higher price therefor than he, Tucker, was willing to pay. In other words, Tucker had a judgment lien upon the property and had the means within his hands to subject the property to the satisfaction of his judgment, and the agreement entered into was simply another form of making payment by the corporation and securing payment by Tucker of his judgment. The court further found that the agreement and deed were executed for a good and valuable consideration.

Other questions have been presented for our consideration but from what we have said, and the authorities cited, we conclude that the judgment should be and it is hereby affirmed.

Thompson, J., and Pullen, P. J., concurred.